**JONES et al. v. COMMISSIONER OF INTERNAL REVENUE (two cases).**

**Nos. 4247, 4248.**

Circuit Court of Appeals, Seventh Circuit.

Feb. 27, 1930.

552

Calvin F. Selfridge and J. F. Dammann, Jr., both of Chicago, Ill., for petitioners.

F. Edward Mitchell, of Washington, D. C., for respondent.

Before ALSCHULER, PAGE, and SPARKS, Circuit Judges.

SPARKS, Circuit Judge (after stating the facts as above).

The question before us is whether or not the facts presented by the record are sufficient to justify the action of the Board of Tax Appeals in affirming respondent's determination that the taxpayer was not entitled to deduct the worthless and unrecoverable parts of the bad debts, referred to in the statement of facts, in arriving at his net income for 1921 and 1922.

The ruling of the Commissioner of Internal Revenue being prima facie correct, the burden of proof is upon the taxpayer to establish his right to the deduction claimed. United States v. Rindskopf, 105 U. S. 418, 26 L. Ed. 1131; Wickwire v. Reinecke, 275 U. S. 101, 48 S. Ct. 43, 72 L. Ed. 184.

The provisions of the statute relating to deductions for worthless debts are contained in the Revenue Act of 1921, and the regulations of the Treasury Department thereunder. They are as follows:

"Section 214. (a) That in computing net income there shall be allowed as deductions: * * *

"(7) Debts ascertained to be worthless and charged off within the taxable year (or, in the discretion of the Commissioner, a reasonable addition to a reserve for bad debts); and when satisfied that a debt is recoverable only in part, the Commissioner may allow such debt to be charged off in part. * * * *" 42 Stat. 239, U. S. Code, title 26, c. 19, § 955 (a)(7) [26 USCA § 955(a)(7)].

"Regulation 62, Art. 151. Bad debts may be treated in either of two ways—(1) by a deduction from income in respect of debts ascertained to be worthless in whole or in part, or (2) by a deduction from income of an addition to a reserve for bad debts. * * *

"Where all the surrounding and attending circumstances indicate that a debt is worthless, either wholly or in part, the amount which is worthless and charged off or written down to a nominal amount on the books of the taxpayer shall be allowed as a deduction in computing net income. There should accompany the return a statement showing the propriety of any deduction claimed for bad debts.

"No deduction shall be allowed for the part of a debt ascertained to be worthless and charged off prior to January 1, 1921, unless and until the debt is ascertained to be totally worthless and is finally charged off or is charged down to a nominal amount, or the loss is determined in some other manner by a closed and completed transaction. Before a taxpayer may charge off and deduct a debt in part, he must ascertain and be able to demonstrate, with a reasonable degree of certainty, the amount thereof which is uncollectible. * * * Partial deductions will be allowed with respect to specific debts only."

■ In dealing with the question of the deduction on account of a partially worthless debt, the three essential requirements of the statute which must be met before it may be allowed are: First, there must be an existing debt; second, that part of the debt sought to be deducted must have been ascertained to be worthless during the taxable year; and, third, it must have been charged off within the taxable year.

That there was an existing debt is beyond question. Whatever might be surmised as to an accommodation gift on the part of decedent to his friend Ellis or to his son Howard is wholly without evidence to support it, and such an inference cannot prevail over the uncontradicted evidence to the contrary.

It is equally clear that $26,253.57 of the debt was worthless in the year 1921. This is practically admitted and is conclusively shown by the financial statements and balance sheets of the Company for that period, and no evidence to the contrary was submitted. The exact figure was correctly calculated from the balance sheet of December 31, 1921.

■ One of the matters upon which the parties do not agree is as to the time that decedent ascertained the worthlessness of this part of the debt. This is indeed a vital question, for, unless the evidence proves that decedent ascertained this fact during the year 1921, the petitioners cannot prevail. Death having sealed the lips of decedent, we are to determine this fact from his conversations with others, his business qualifications, and his opportunity for observing the actual financial conditions of the Company during 1921. The evidence is uncontradicted that he was a business man of unusual experience in financial matters and in judging the worth of securities and investments. Monthly and annual financial statements and balance sheets of the Company for 1921 and 1922 were regularly submitted to him during those respec-

tive years; and they correctly reflected its condition at those times. In fact, it may be said that he was well informed as to its condition for many years prior to 1921. As early as 1919 he said to a friend that he would never get his money out of the Company, but gave no reason. During 1921 he talked with his son, who was then president of the Company, concerning its financial condition, and they both decided to sell the property and to go into liquidation, for the reason that the Company was not making expenses, and was unable to meet its obligations. During the years of 1918, 1919, and 1920 the Company had shown a substantial loss, and the balance sheet on December 31, 1921, showed that the debt owing to decedent was worthless to the extent of $26,253.57. With these uncontradicted facts in possession of decedent in 1921, we are forced to the conclusion that in that year he was fully cognizant of the fact that his debt was worthless to the extent of the deduction claimed. The mere fact that the calculation for the income tax return was not made until some time between December 31, 1921, and March 15, 1922, ought not to be, and is not, controlling in determining when decedent ascertained and determined that the debt was worthless, for the law does not require the calculation to be made within the taxable year. Chicago Railway Equipment Co. v. Blair (C. C. A.) 20 F.(2d) 10.

■ Respondent contends that the amount of the debt which is claimed as a deduction in 1921 was in fact worthless long before 1921, and that from the facts presented decedent evidently ascertained that fact prior to 1921. This, if true, would also be fatal to petitioners' contention. But in determining this fact it is only fair to place ourselves in decedent's position prior to 1921. In the light of subsequent events, it is quite easy now to determine that the debt was worthless before 1921; but the real question with which we are concerned is, not when did the debt become worthless, but when did decedent ascertain it to be worthless.

A few years previously he had tried to help a friend in a small manufacturing venture, and had advanced considerable money from time to time for this purpose, and it was not successful; with the consent of the friend he had placed his own son in charge of it, to whom the friend transferred all of his interest in order to protect his benefactor. Decedent in good faith did everything within his power to cause the business to succeed by advancing money for its use, but in spite of

his efforts each year showed a substantial loss; and by the end of 1920 he had loaned the Company more than $105,000. The only time the Company showed a profit was in the months of November and December, 1918; then followed a depression which lasted until the fall of 1919, when business became better, and it continued to improve until the fall of 1920, when business again became worse. On November 10, 1920, decedent loaned the Company $8,000 additional, and in 1921 the further sum of $26,500, and in 1922 the further sum of $10,000. These payments can be explained only on the theory that decedent, at the end of 1920, still had hopes of putting the business on a sound basis, and that he had not in his own mind been convinced that any part of his debt was entirely worthless. We think that he ascertained this fact for the first time, to his own satisfaction, in 1921, and that in arriving at such conclusion he made reasonable investigation of the facts and drew reasonable inferences from the information thus obtained.

The uncontradicted evidence shows similar, and in effect the same, facts with respect to the deduction claimed for 1922.

The remaining question is whether or not decedent complied with that part of the statute which requires the debt to be charged off within the taxable year. It is undisputed that decedent kept no books of account except his bank book, and for this reason no formal book entry of charge off was necessary. Appeal of Huning Mercantile Co., 1 B. T. A. 130; Appeal of Collin, 1 B. T. A. 305; Appeal of United States Tool Co., 3 B. T. A. 492; Robert Mitten v. Commissioner, 11 B. T. A. 731. "The mechanical process of keeping accounts is not prescribed by statute. Such accounts may be recorded in an elaborate set of books, or in mere memoranda, or be recorded only in the brain of the taxpayer. It can make no difference as to the form of such operation." This language was used by the Board in the appeal of Collin, supra, and we commend its reasonableness and fairness.

We are convinced by the uncontradicted evidence that decedent did, in his own mind at least, charge off the proper amount of indebtedness in each of the years 1921 and 1922, and that he should receive credit for said respective sums upon his income for those respective years.

The orders are reversed and the causes remanded for further proceedings not inconsistent with the foregoing opinion.