## STEPHENSON v. COMMISSIONER OF INTERNAL REVENUE.

### No. 8661.

Circuit Court of Appeals, Eighth Circuit.

Sept. 12, 1930.

T. S. Allen, of Lincoln, Neb. (H. J. Requartte and O. C. Wood, both of Lincoln, Neb., on the brief), for appellant.

Barham R. Gary, Special Asst. to Atty. Gen. (G. A. Youngquist, Asst. Atty. Gen., Sewall Key, Sp. Asst. to Atty. Gen., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Joe S. Franklin, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., on the brief), for appellee.

Before STONE and VAN VALKENBURGH, Circuit Judges, and DAVIS, District Judge.

DAVIS, District Judge.

This is a petition to review a decision of the United States Board of Tax Appeals affirming the action of the Commissioner of Internal Revenue in asserting a deficiency of income tax for the year 1921 in the sum of $975.71, and for the year 1922, in the sum of $1,701.84 against appellant.

The appellant claims that he was entitled to certain deductions from income under sec-

tion 214(a) of the Revenue Act of 1921 (42 Stat. 239, 240), providing that in computing income there shall be allowed as deductions:

"(4) Losses sustained during the taxable year and not compensated for by insurance or otherwise, if incurred in trade or business;

"(5) Losses sustained during the taxable year and not compensated for by insurance or otherwise, if incurred in any transaction entered into for profit, though not connected with the trade or business; * * *

"(7) Debts ascertained to be worthless and charged off within the taxable year."

The Board rejected the petition on the following grounds: "(1) that even though petitioner was engaged in business as a banker, the purchase of notes from the bank by petitioner was an individual venture and the loss was not 'incurred in trade or business'; (2) there was no evidence petitioner purchased the securities as a transaction entered into for profit; (3) there was no proof of loss; (4) there was no proof that petitioner sustained a loss because he assumed a moral obligation in purchasing paper from his bank to provide it with liquid capital."

The appellant, who was in the business of life insurance and money loaning on behalf of insurance companies, was a member of the board of directors of the City National Bank of Lincoln, Neb., in 1919 and 1920, and chairman of the board in 1921. There were sixteen directors and about one hundred and sixty stockholders. The bank was largely controlled by L. B. Howey and L. J. Dunn, president and vice president, respectively. They owned more than 50 per cent. of the stock. The bank through Howey and Dunn had extended large lines of credit to certain creditors, corporations, and individuals. The extent of its loans was not known to the directors. The larger borrowers were the Hebb Motor Company, the Patriot Motor Company, the Nebraska Aircraft Corporation, and certain subsidiaries of these companies. The Federal Reserve Bank in the early part of 1920 refused to discount loans such as were being submitted by the City National Bank and turned back some paper that they had already discounted. The bank found itself in a precarious situation by reason thereof. The directors decided to raise a pool and to take out of the bank certain of these obligations which were thought by the examiners to be perilous. Howey and Dunn, who were largely responsible for the situation, agreed to each supply $150,000 for this purpose, making a total of $300,000, and this was in April, 1921, and they each subsequently, on May 3, 1921, advanced $25,000 additional, making the amount thus raised $350,000; the other directors supplied $398,000, making the total sum of $748,000, of which amount the petitioner contributed $35,000. These sums were not subscribed all at one time, but the pool above mentioned was the net result of their effort. Notes were then taken out of the bank and either cash or notes from the pool substituted in lieu thereof.

The plan was for these directors, acting through a trustee who had possession of the paper, to collect the proceeds of these obligations and to first pay three of the parties whose advances were regarded as preferred and then to prorate the balance in proportion to the contribution of the various directors to the fund. A comparatively small amount was collected of these notes. Misfortune overtook the makers of the notes, the companies executing them were forced to liquidate, and the total amount collected on these obligations was hardly sufficient to pay the three individuals who had preferred claims. So that the remainder of the contributors to the fund, of whom the petitioner was one, received nothing on that account.

Subsequent to the raising of this pool of $748,000, and on May 15, 1921, the board of directors of the City National Bank adopted a resolution wherein it was provided that, inasmuch as it was desirable for the bank to have a $1,000,000 in cash to be used in case of emergency, and as members the directors were willing to purchase the notes of the bank in that sum, the officers were authorized to sell such notes to the directors to the extent of $1,000,000. It was provided that these notes would be sold with recourse on the bank. The notes just mentioned were sold to the directors in exchange largely for their own notes, which paper the bank was able to discount in various places throughout the country and thereby secure cash. This was a separate and distinct transaction from the creation of the pool. The purchasers of these notes had recourse on the bank. There was no liability on the part of the bank in reference to securities taken over by the pool.

The appellant by this transaction lost the entire amount of his contribution to the directors' pool, and in his tax return for the year 1921 took a deduction of $17,500 and a like sum for the year 1922.

■ Was this loss deductible under paragraph 4 of section 214(a) of the Revenue Act of 1921 as a loss sustained during the taxable year and incurred in trade or busi-

ness? The point is made that appellant did not suffer this loss in the course of his business, that of life insurance and money loaning as agent for others. This court in Mastin v. Commissioner, 28 F.(2d) 748, 752, adopted a statement of the law contained in Mente v. Eisner (C. C. A.) 266 F. 161, 162, 11 A. L. R. 496, which is as follows: "We think that the language 'losses incurred in trade' are correctly construed by the Treasury Department as meaning in the actual business of the taxpayer, as distinguished from isolated transactions. If it had been intended to permit all losses to be deducted, it would have been easy to say so. Some effect must be given to the words 'in trade.'" So it cannot be successfully contended that the loss in this case was incurred in the actual business of the taxpayer, because this was an isolated undertaking separate and apart from appellant's usual and actual business.

Does the situation bring the appellant within the provision of paragraph 5 of the above statute which provides for a deduction for losses sustained during the taxable year if incurred in any transaction entered into for profit though not connected with trade or business? It seems that the appellant did not participate in the plan of raising this money for profit. His purpose evidently was as an officer and director of the bank to try to save the institution from failure. He thought that the notes that the directors were buying were good and that they would be paid in due time. The examination that he made of the affairs of the various companies whose notes were purchased caused him to have confidence in their ability to meet outstanding obligations. But it was quite evident that his purpose was not to make a profit out of the transaction, and he would, no doubt, have disclaimed any such an object at the time. The saving of the institution, the avoidance of the effect of its failure, and the desire to escape the reflections that would thereby be cast upon the appellant and others connected with the bank, were considerations that moved him in contributing to this fund. But it cannot be maintained that he entered into this plan for profit.

Was this debt ascertained to be worthless and charged off within the taxable year? The pool held $95,400 of the notes of two motor companies. These plants were sold in bankruptcy proceedings in September, 1921, for $126,000, of which the pool's share was about $23,000. There was a loss there of $72,400. The bankruptcy of the motor companies was disastrous to the subsidiaries.

The pool held notes of certain individuals secured by stock of one of the motor companies for $90,250. After the sale of the companies' assets, these parties left the country and went to Mexico. Their notes were uncollectible and the loss was total. The pool held $82,572.75 in notes of the Standard Securities Corporation, the fiscal agent of the motor companies. These likewise were worthless after the sale of the property of the motor companies. The Sheridan Park Investment Company, another of the subsidiary companies, was ascertained to be a total loss in 1921, as the proceeds from the sale of all of its property was barely sufficient to pay the balance of the debt of the bank. This loss to the pool was $127,000. The pool held notes of $11,104.15 of a Canadian corporation, the Continental Mortgage & Land Company. The property of this company was heavily incumbered, and it did not appear wise to undertake to assume the payment of interest and taxes on the prior indebtedness on this land in order to endeavor to protect these notes.

The pool held notes of the Nebraska Air Craft Corporation aggregating $120,000. At a foreclosure sale under a mortgage in the spring of 1922, the property of this company sold for $17,500. The notes held by the pool were, therefore, a total loss. Among the other notes was one for $17,000, executed by W. S. Jones. It was ascertained to be a total loss during that year. Notes aggregating $17,500, issued by the Union Securities Company, were also held by the pool, and following the failure of the motor companies they were ascertained to be worthless. There was also in the pool notes originally given to the Standard Securities Corporation in connection with the sale of automobile trucks, together with some debenture bonds issued by this company. These securities aggregated $186,679.91. The trustee of the pool made an effort to collect and did collect approximately $15,000 of this paper. The balance was ascertained to be uncollectible in the year 1922. The total of these sums make an aggregate loss to the pool of more than $748,000.

So that, as stated above, none of the contributors to this fund, except the three individuals who were regarded as having preferred claims, was reimbursed in any sum whatsoever. The custodian of the pool funds testified that 50 per cent. of the notes held became worthless in 1921, and the balance were determined worthless in 1922. This view is fully sustained by a careful examination of the record. During the year of

1921, the loss to the pool of $72,400 on the notes of the two motor companies, of $90,250 on individual notes secured by stock of the motor companies, of $127,000 on account of obligations of the Sheridan Park Investment Company, of $82,572.75 on the notes of the Standard Securities Company, of $11,104.15 on the debt of the Canadian Company, was recognized and determined by the interested parties. The sale of the assets of the motor companies by the trustee in bankruptcy, and the sale of the property of the investment company under a foreclosure, definitely rendered these obligations worthless. The losses on that account were "from closed and completed transactions." Mastin v. Commissioner of Internal Revenue, supra. These items constitute one-half of the total amount advanced to relieve the bank. The loss on some of the other accounts was more or less uncertain during the year of 1921, but the fact was definitely established before the end of 1922 that the contributions made to the pool were a complete loss. There is not the least doubt that appellant was thoroughly informed concerning the status of all these matters, because he was the most active participant in all of the negotiations.

It was not the privilege of the taxpayer to elect the time that the debt would be declared worthless, but it was his duty to make the deduction during the year that the worthlessness of the obligation was ascertained. Avery v. Commissioner of Internal Revenue (C. C. A.) 22 F.(2d) 6, 55 A. L. R. 1277.

Appellee contends that no loss was shown because the pool contributors had recourse on the bank, and there was no showing that this had been resorted to, and, hence, no proof of loss. The finding of the Board of Tax Appeals that "it is obvious, therefore, that the petitioners had recourse against the bank for any losses they might sustain through their purchase of these accounts, and in the absence of proof of the insolvency of the bank, or other reasons why it cannot be so held, no proof of ultimate loss has been established," is not supported by the evidence. With respect to the notes issued by the bank as a result of the resolution of May 15, 1921, there was recourse on the bank. But the creation of the pool was a separate transaction and with respect to the securities thereby taken out of the bank there was no recourse on the institution. The very purpose of the creation of the pool would have failed of accomplishment if the bank had remained liable on the doubtful securities removed. There was an outright sale of these securities to the parties who put up this fund, and

when the persons liable in the first instance were incapable of satisfying their obligations there was no remedy against the bank.

Can it be said that these losses were "charged off" within the taxable year? The testimony was that no books were kept by any one in connection with the pool except a record of receipts and disbursements. No formal requirement as to what will constitute an actual charging off of a worthless debt seems to prevail. Where the taxpayer, acting in good faith, and in accordance with the fact, forms a mental determination, during the taxable year, under the circumstances here present, to charge off a worthless debt, there has been compliance with the statute. Jones et al. v. Commissioner of Internal Revenue (C. C. A. 7) 38 F.(2d) 550. This, too, has been the uniform ruling of the Board. Mitten v. Commissioner, 11 B. T. A. 731.

The decision of the Board of Tax Appeals is reversed, and the cause remanded for further proceedings in accordance with views herein expressed.