### BLAIR v. COMMISSIONER OF INTERNAL REVENUE.

### GLADSTONE CORPORATION v. SAME.

#### Nos. 283, 284.

Circuit Court of Appeals, Second Circuit. July 19, 1937.

Clarence Blair Mitchell, of New York City (Choate, Larocque & Mitchell and H. Henry Ramm, all of New York City, of counsel), for petitioner.

James W. Morris, Asst. Atty. Gen., Sewall Key and Helen R. Carloss, Sp. Assts. to the Atty. Gen., for respondent.

Before MANTON, SWAN, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

Blair's appeal involves a deficiency in income taxes for the year 1929; that of the Gladstone Corporation involves a deficiency in income taxes for the year 1930. These cases were argued together and will be considered in one opinion. The question presented is whether deductible losses were sustained by auction sales in 1929 and 1930 of notes of the International Coal Products Corporation.

Blair and two others were members of the partnership of Blair & Co., a banking concern engaged in financing commercial enterprises. This partnership was dissolved in 1920 when Blair & Co., Inc., was organized to continue its banking business and another corporation, Blair Securities Company, to take over assets which were not readily bankable.

The International Coal Products Corporation was controlled by the Blair Securities Corporation. It was organized for the purpose of developing a process for low temperature distillation of coal. Large sums of money were expended in experimenting and developing, under certain patents which it owned, a process known as carbocoal, for

the manufacture of smokeless fuel from bituminous coal, to be used as a substitute for anthracite coal.

When International needed credit, its notes were indorsed by Blair & Co. and by the individual partners. After the partnership was dissolved, the Blair Securities Corporation acted as banker for International, but, since its capital was limited, funds were advanced by Blair and Edgar L. Marston. In 1921 the Consolidation Coal Company, a large producer of bituminous coal, investigated the carbocoal process; the report of its engineer recommended expenditures by that company in perfecting it. August 2, 1922, the Consolidation Coal Company entered into an agreement with International whereby funds for experimental and development work were to be supplied by the Consolidation Coal Company and a new corporation called the Consolidation Coal Products Corporation was to be organized; which it was in October, 1922. The Consolidation Coal Company advanced $105,000 to carry on experimental work, by erecting a plant at Fairmont, W. Va., and perfecting apparatus needed for the development of the process. From 1922 to 1926 approximately $454,000 was advanced by the Consolidation Coal Company. On June 10, 1927, a new contract was entered into between International and Consolidation Coal Company which provided that certain patents relating to this process be transferred to the Consolidated Coal Products Corporation. These patents had previously been licensed to the Clinchfield Carbocoal Corporation, a subsidiary of International. Up to April 1, 1927, $683,000 had been spent by the Coal Products Corporation.

Between December 1, 1921, and February 1, 1922, Blair received six notes of International totaling $1,714,285.17, evidencing money he had advanced and payments made by him as a result of indorsing loans made to International. Three of these notes, having a balance due of $447,310.72, were sold in 1929 at auction for which he received the sum of $710.43. No payments of interest have ever been made on the notes of International. The petitioner claimed a loss of $446,600.29 for the year 1929.

The Gladstone Corporation was organized in 1926. Its entire capital stock is owned by four daughters of petitioner Blair, who is its president. Five notes of International dated June 25 aggregating $134,400 were indorsed by Blair's daughters and turned over to this petitioner. In 1930 these notes were sold at auction for the net sum of $66, the sale being made for the purpose of establishing a loss. This petitioner claimed a deduction in 1930 of $134,334.

The Commissioner contends that the deductions are not allowable because the notes were worthless prior to the years of sale; and, moreover, that the Gladstone Corporation has not established any basis for measuring the loss from the sale, assuming the loss to be otherwise deductible.

 It is not disputed that the Blair sale in 1929 and the Gladstone sale in 1930, upon which losses were shown, were bona fide. But it is objected that the notes were worthless prior to those years. Under the Revenue Act of 1928 debts ascertained to be worthless may be charged off within the taxable year. Section 23(j), 45 Stat. 791 (26 U.S.C.A. § 23 note). If the taxpayer has reasonable expectation that the debt or any part of it may be paid, he is under no duty to charge it off, and the rule is that ordinarily in making this determination he is allowed a fair degree of latitude. Helvering v. Ames, 71 F.(2d) 939 (C.C.A.8); Duffin v. Lucas, 55 F.(2d) 786 (C.C.A.6), cert. den. 287 U.S. 611, 53 S.Ct. 14, 77 L.Ed. 531. But the burden rests on the taxpayer to show that he had substantial reason to believe that eventually payment—partial, at least—of the obligation would be made. We think the petitioners have adequately borne this burden.

It is urged that Marston, who was similarly situated, holding notes of International, wrote off this debt in 1922. But that fact is not conclusive, particularly in view of the evidence of a subsisting and reasonable expectation of value thereafter. The development of the carbocoal process continued actively between 1922 and 1927, when the product was thought to have reached the commercial stage. It was during this period that the Consolidation Coal Company, which might well be expected to make reasonably prudent investments, advanced over $600,000 to finance its development. The loans of Mrs. Blair and her daughters amounting to $720,000 were made in 1925. A settlement involving over $1,000,000 was effected with the United States government in 1925, which put full control over the patents in International. There followed thereafter a plan for the erection of a plant in Salt Lake City, Utah, and negotiations ensued in which important businessmen took interest, showing their readiness to subscribe a large sum of money to carry out the project. The plan

was abandoned in 1929 only when a gas company which had applied to the Public Utilities Commission of Utah obtained a certificate of public convenience and necessity on December 31, 1928, for building pipe lines to carry natural gas from Southwestern Wyoming to Salt Lake City. When the pipe lines were actually under construction in May, 1929, the plans for erecting a carbocoal plant in Utah were abandoned. While it may be admitted that during these years International was not on a profit-making basis, and that its product was in the experimental stage of development and large liabilities were being accumulated, still it was reasonable to hope for eventual success and, consequently, for payment of the notes. The patents owned were regarded as valuable and were reasonably expected to yield good returns in the future. Petitioners had reason not to abandon expectation of payment.

The notes were sold at public auction and the fact that Roadstrum, who was associated with Blair, made the purchases, does not brand the sales as mala fide. Indeed, the Board found otherwise. The sales were free of any restriction or agreement. The loss sustained by the sale of these notes was properly deductible, notwithstanding that the purpose of the sales was to offset gains, a fact which of itself is legally immaterial. Helvering v. Ames, supra.

As to the Gladstone Corporation, however, the Board found, with reason, that its cost basis was not established. In 1930 this petitioner sold the notes of International which had been transferred to it by Blair's daughters. It is claimed by petitioner that the acquisition of these notes constituted a tax-free exchange within section 112(b) (5) of the Revenue Act of 1928, 45 Stat. 791 (26 U.S.C.A. § 112(b)(5) and note), and hence that under section 113(a)(8), 26 U.S. C.A. § 113 note, the cost basis of the notes is the same as in the hands of the transferors. Section 112(b)(5) provides that no gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation and immediately thereafter such person or persons are in control of such corporation. It further provides that in the case of an exchange by two or more persons this provision shall apply only if the amount of the stock and the securities received by each is substantially in proportion to his interest in the property

prior to the exchange. Section 113(a)(8) provides that, where property is acquired by a corporation after December 31, 1920, pursuant to an exchange as described in section 112(b)(5), the basis shall be the same as it would be in the hands of the transferor, increased in the amount of gain or decreased in the amount of loss recognized to the transferor under the law applicable to the year in which the transfer was made. The Board made no finding with reference to the acquisition of the notes of International other than that the petitioner was organized in 1926, that its capital stock is owned in equal shares by the four daughters of Blair, and that the five notes of International here in issue dated June, 1925, aggregating $134,-400, were indorsed to it by Blair's daughters. The Board held that the evidence was insufficient to establish the value of the notes at the time they were taken over by the petitioner and that there was no basis for computing any loss sustained by the petitioner upon the subsequent sale of the notes. Testimony regarding the transaction was given by the secretary of the petitioner who said that the authorized capital stock consisted of 1,000 shares, of which each daughter received 250, and that each turned over to the petitioner at the time of its organization notes of International in the amount of $96,000 and $9,600, together with other securities which, however, were not listed. The value of these securities was not established.

Section 112(b) (5) requires that the value of the interest acquired in the corporation be substantially identical in value to that of the property transferred. United Carbon v. Com'r (C.C.A.) 90 F.(2d) 43, decided by the Fourth Circuit May 4, 1937 (where the corresponding section of the 1926 act was involved, section 203(b) (4), 44 Stat. 9). It is true that the property transferred by all four daughters apparently constituted the sole assets of the Gladstone Corporation in return for which its total capital stock was issued. But it cannot be presumed that the value of the property conveyed by each daughter was substantially identical to that of the interest in the corporation which each acquired where non constat what the value of the securities was which each transferred. It is not sufficient for our purposes that the petitioner's secretary testified that each daughter turned over securities of "approximately equal value." He admitted that there were differences in value which the

daughters adjusted inter se by check. These differences were described as "slight" and, indeed, section 112(b) (5) speaks of a substantial, not an absolute, identity in value. Nevertheless, the Board made no finding as to the applicability of section 112(b)(5), and we are certainly not justified in concluding on the record before us that it does apply and that section 113(a)(8) governs the cost basis to the petitioner. The petitioner, however, should be granted an opportunity to produce adequate proof on these matters.

 The cost of the notes to the petitioner, measured by the market value of the stock given in exchange, Rice v. Com'r, 47 F.(2d) 99 (C.C.A.1), was not proved. No basis, therefore, was established for computing the loss and on this record no loss is deductible. Burnet v. Houston, 283 U. S. 223, 51 S.Ct. 413, 76 L.Ed. 991.

The decision in the Blair case will be reversed and in the Gladstone case will be remanded for further proceedings in accordance with this opinion.

Reversed and remanded.