## AMERICAN CIGARETTE & CIGAR CO. v. BOWERS.

### No. 45.

Circuit Court of Appeals, Second Circuit.
Nov. 8, 1937.

Robert H. Montgomery, of New York City (Thomas G. Haight, of Jersey City, N. J., and James O. Wynn and George G. Blattmachr, both of New York City, of counsel), for appellant.

Lamar Hardy, U. S. Atty., of New York City (Malcolm A. Crusius, Asst. U. S. Atty., of New York City, of counsel), for appellee.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

The question on which this action depends is the propriety of a deduction which the plaintiff sought to take from its gross income in computing its net income for the year 1924. It had been the holder of 48% of the shares of the Havana Tobacco Company, which owned all the shares of Cabanas y Carabajal and of J. S. Murias y Ca., both cigar manufacturers in Havana. The plaintiff had lent large sums to J. S. Murias y Ca., and was its only creditor, except for Henry Clay & Bock Ld.—all of whose shares were also owned by the Havana Tobacco Company. The Murias business steadily declined for a number of years, due largely to its exclusion from the English market where most of its cigars were sold; an effort to revive it by transferring the factory to another place was unsuccessful, and it was finally decided in 1924 to wind it up. The assets were appraised and transferred to Cabanas y Carabajal at the appraised figure, which—though it was their fair value, so far as appears—was not enough to pay the debts in full. Henry Clay & Bock, Ld. was paid and the plaintiff took what remained, which left about $68,000 of its own debt uncovered. The question at bar is whether this amount was a deductible loss for the year 1924, and that in turn depends upon whether the plaintiff then for the first time ascertained the debt to be pro tanto worthless, and charged it off. The defendant denies that it did either. As to the first, he says that since the debt was in the form of a number of notes, and since the Murias business had been patently dying for a number of years, the notes

should have been progressively "ascertained" to be worthless and charged off; that the whole lot should not have been kept in solution—so to speak—until the assets were sold. The second point depends upon the form of the entry made upon the plaintiff's books, which the defendant says was not a "charge off." The actual advances had been only $162,511.48, the rest of the claim was for interest; after crediting all payments, including what was received from Cabanas y Carabajal, the balance, as of December 31, 1924, was nearly $474,000, of which about $405,000 was interest. However, because this interest had aways been of very doubtful collectibility, the plaintiff carried it in suspense account, and never tried to deduct it. Thus the deduction actually claimed is altogether made up of cash advanced. The entry supposedly constituting the "charge off" was as follows:

```
Sundries
   To Sundries
For adjustment arising out of
settlement of loans to J. S.
Murias y Ca., dissolved and
its affairs liquidated during
December 1924.
   Securities   Cuban   Tobacco
   Co., Inc.
For loss sustained in settle-
ment foregoing loans as fol-
lows:
   Balance after final payments  463,697.45
   Interest due 7/10/24 to 10/31/24  10,236.33
                                     ----------
      Total Debits ......  473,933.78
   Deduct:
   Interest  carried  in  Sus-
   pense owing to its not be-
   ing earned .................  405,596.36
                                 ----------
                                  68,337.42   68,337.42
Note:
   This  charge  ($68,337.42)  to
   Securities  Cuban  Tobacco  Co.
   was  authorized  by  Board  of
   Directors  1/7/25  upon  the
   Basis that it is an adjust-
   ment  of  book  values  arising
   out  of  the  reorganization  of
   Havana  Tobacco  Co.  which
   company  owned  the  entire
   Capital Stock of J. S. Murias
   y Ca.
   Interest, Etc. in Suspense.............  405,596.36
   Bills Receivable, Loans, etc..........  463,697.45
   Interest Receivable ...................  10,236.33
```

The Cuban Tobacco Company had taken over the assets of the Havana Tobacco Company in the spring of 1924; the plaintiff held 62.8% of its shares. The judge concluded that the entry was not such a "charge off" as the statute required and dismissed the complaint.

■■ The defendant's first point is clearly bad; he seeks to impose a duty upon the plaintiff, which held a series of notes, each year to appraise the assets of its debtor and to marshall the notes against the deficiency for that year. In the first place the plaintiff need not have taken the progressive book depreciation of the assets as final; it was just because it did not that it kept the business going until 1924. But even if it had been bound so to take the depreciation, the supposed duty to marshall it against specific notes has no basis in the statute. Each note was a separate debt and entitled to its proper dividend upon liquidation. A creditor may indeed allocate all that he receives upon one note until it is extinguished, but nothing compels him to do so; in the absence of any agreement to the contrary he may apply payments as he pleases. Bidwell v. George B. Douglas Trading Co., 183 F. 93, (C.C. A.2).

■■ As to the second point the testimony shows that the plaintiff's directors did make the entries because they hoped that the assets of the Cuban Tobacco Co. might increase enough in value to recoup the loss; and while the books themselves must control, here the entry was not as explicit as it should have been. Nevertheless, it was "for loss sustained in settlement of foregoing loans," that is, the loans to J. S. Murias y Ca., and that loss was $68,000, the amount by which the debt was worthless. Had the entry stopped there, there could have been no debate, even though it would have been more regular to write the item into a Profit and Loss, a Surplus or a Reserve. Instead of doing any one of these things, the books went on to declare that the "charge to the securities"—the plaintiff's securities in the Cuban Tobacco Co.— was on the "Basis" of an adjustment of book values; that is to say, the securities received on the reorganization were treated as prospectively, or at least possibly, enhanced in value by the amount of the loss. This was apparently on the theory that the whole formal transaction might be disregarded and the plaintiff's original interest treated as unchanged. The situation was at least no stronger than, if it was as strong as, one where a creditor, who had bought in his debtor's assets at execution, carried them on his books, not at the price they had brought, but at the amount of the debt, believing that they might some day bring as much. Nobody can doubt

that if he later sold them, his "basis" for gain or loss would not be the debt, but the price he had paid for them, and that if his loss was ever to figure as a deduction, it must be as a worthless debt. In the case at bar the Treasury could certainly not be compelled to allow this item as part of the "basis" of the Cuban assets, when the plaintiff disposed of them. Therefore the issue really comes down to whether, when the fact appears from the books that the debt is pro tanto worthless, it is a sufficient "charge-off," though the taxpayer has not claimed it as such, but in its place has attempted to set up a corresponding item as an increase in assets taken over from the debtor. A "charge-off" does not seem to us to depend upon the correctness of the taxpayer's understanding of his privilege; it must indeed show that the debt is worthless, but that is enough. No doubt that implies a definite attitude towards it, but that appeared here; the debt, as debt, had been finally liquidated when J. S. Murias y Ca. was liquidated. That attitude the plaintiff did not compromise by preparing the way for another kind of allowance or deduction, any more than by failing to claim the deduction in its return for 1924. As soon as the debt was no longer carried upon its books as an asset, the entry was "charged off," even though the value of other assets were erroneously swelled.

Judgment reversed; cause remanded.

CHASE, Circuit Judge (dissenting).

The question presented is not whether a deductible loss was sustained, for the proof, at best, shows only a debt ascertained to be worthless and charged off during the taxable year.

The right to a deduction on that basis is not only dependent upon the fact of worthlessness but upon the ascertainment of that fact followed by the charge-off, in the year for which the deduction is claimed. It is self-evident that where books are kept the statute requires that the item be charged off on the books. This does not mean that any particular form of entry is required, though a consistent method would serve to obviate doubt, but whatever is done should show that the taxpayer seeking the deduction had followed the ascertainment of worthlessness of the debt by some entry showing that.

This plaintiff used the unpaid balance of the debt to try to write up the cost of its Cuban stock in 1924 and that use of it continued for some years thereafter before there was any attempt to take it as a deduction. Of course, if the debt was valueless when that attempt was made, the write-up added nothing to the cost of the Cuban stock which had already been determined by what had been done. Its actual cost was not changed by a book entry, and I make no point of any possibility of advantage to the plaintiff from having its basis on future sale wrongfully enhanced by the entry as made should its true nature remain undiscovered. But the attempt remains an undisputed fact, and its effect is not nullified by showing that it was a futile thing by way of a write-up, for it was real enough in its bearing upon whether or not the debt had been ascertained to be worthless.

If the entry did not accomplish its expressed purpose, it didn't accomplish anything else of moment here, and leaves the plaintiff as it would have been had it not been made at all.

This is so because Congress made worthlessness, not uncollectibility, the underlying factor. The entry, whatever its form, must be in line with the ascertainment of worthlessness to be the charge-off required. This entry did, indeed, indicate that it had been ascertained that the debt could not be collected from the debtor, and were that enough to show worthlessness I would not disagree with the result. But Congress must be presumed to have chosen the word it meant to have given effect and due effect can't be given to worthlessness without excluding any idea of value for any purpose. So the charge-off which must follow the ascertainment of worthlessness, no matter what its form, must in effect exclude the idea that the taxpayer still retains the item for its possible present or future advantage as events may transpire. As this entry was made in accordance with deliberate action by plaintiff's board of directors, who should be given the credit for knowing how they then wanted the debt treated and shows that they did not then consider it of no value for any purpose, I cannot accept it as a charge-off for worthlessness. Far from being such a charge-off, it seems to me to be decisive evidence that during the taxable year the debt was not even ascertained to be worthless but was thought to be of value as part of the claimed cost of an asset.

I would affirm.