## COMMISSIONER OF INTERNAL REVENUE v. MacDONALD ENGINEERING CO.
### No. 6655.

Circuit Court of Appeals, Seventh Circuit.
April 1, 1939.

James W. Morris, Asst. Atty. Gen., and Robert N. Anderson, Sewall Key, J. P. Wenchel, and Ralph E. Smith, Sp. Assts. to Atty. Gen., for petitioner.

George Clark, of Berkeley, Cal., for respondent.

Before SPARKS, MAJOR, and TREANOR, Circuit Judges.

SPARKS, Circuit Judge.

The Commissioner petitions for review of a decision of the Board of Tax Appeals allowing a deduction for worthless debt from the income tax of respondent for the year 1929, contending that the debt for which the deduction was allowed was neither ascertained to be worthless in the taxable year nor properly charged off.

The MacDonald Engineering Company of California, hereinafter referred to as the California Company, is a wholly owned subsidiary of the MacDonald Engineering Company of Illinois, hereinafter referred to as the taxpayer, organized about 1919 to design and build a warehouse, grain elevator, and mill for the Western Milling Company on ground owned by the latter in Oakland, California. By 1925 the latter company had become so involved financially that refinancing was required, and in March, 1925, it was agreed between various sets of creditors that the company should give its note for $210,000 to the Webster Manufacturing Company which had several judgments against it on some of which execution had issued and sales occurred. This note was secured by deed of trust on all the real and personal property of the debtor. The debtor gave its note for $153,894 to the California and another company, secured by a second deed of trust on all the debtor's property, and a third deed of trust and note for $200,000 to three individuals for advances to be made by them to clear the property of a number of other claims. The interest of the California Company in the second note amounted to $96,094, subsequently reduced by payments to $94,418. The deeds of trust were to have priority in the order mentioned, and were so recorded.

In February, 1926, the beneficiaries under the third deed of trust assigned their note and security to one Byrnes who abandoned the security and filed an action at law against the debtor, had an attachment issued and levied upon the real property which was sold under execution in May, 1926, to Byrnes. Meantime, in March, 1926, the debtor, which had changed its name to Oakland Terminal and Elevator Company, filed suits against the holders of the first and second trust deeds to restrain sale of the property under those deeds on the ground that the notes and deeds were void because they were not authorized by the Railroad Commission whose consent is required under the Public Utilities Act of California, Gen.Laws Cal.1923, Act. 6386, § 1 et seq., for all encumbrances on public utilities. The injunctions were refused, whereupon the trustees under both deeds of trust proceeded to sell the property, the second on May 10, 1926, for $100,000, and the first on May 11, for $221,150, both of which bids were credited on the respective debts, with no cash paid. Later, the Webster Company which had the first trust deed, filed suit against Byrnes to clear title, and Byrnes filed cross complaint contending that the Webster claim was invalid for failure to obtain the approval of the com-

mission. The lower court in this case also upheld the validity of the first trust deed, and while this was reversed by the appellate court, the Supreme Court of California upheld the lower courts and ruled that the Act as it stood in March, 1925, when the mortgages were imposed, did not extend to warehouses, hence the Webster Company had fee simple title to the property upon which it had foreclosed. See Webster Mfg. Co. v. Byrnes, 207 Cal. 630, 280 P. 101; Oakland Terminal & Elevator Corp. v. Mercantile Trust Co., 207 Cal. 794, 280 P. 107, both of which cases were finally decided in 1929. While these two cases were pending, no action was taken in the California Company case.

The result of the decisions was to give clear title to the Webster Company, leaving nothing against which the California Company could collect its claim arising out of its note and trust deed, although the property involved was found to have a market value as of March, 1925, of $600,000, and the same in 1929 when the litigation was terminated.

In December, 1929, the California Company transferred the debt to the taxpayer which thereupon credited its subsidiary with the amount of it and, at the same time, charged the entire amount off to profit and loss. In 1927, a corporation was formed for the purpose of taking title to the property involved, and the taxpayer took three-fourths of the capital stock, paying $300,000 for it. The Board of Tax Appeals found that the Western Milling Company debt to the California Company in the amount of $94,418 was ascertained to be worthless and charged off by that company in 1929.

The taxpayer filed a consolidated return, including therein the income of the California Company. As proof of the charging off of the debt of the Western Milling Company, it introduced the testimony of its treasurer for the year 1929 who read from the books of the taxpayer the entry relied upon to constitute a charge-off: "December 1, 1929. Profit and loss, Debit $100,162.12, MacDonald Engineering Company of California; credit $100,162.-12." The accompanying explanation read: "Above covers second mortgage note of Western Milling Company, $94,533.28 to MacDonald Engineering Company, with interest, $5,067.31, and miscellaneous expenses in connection with this matter, $561.52. Total, $100,162.12. This note was wiped out by California Supreme Court decision in August, 1929, finally conferring title in Webster Manufacturing Company under the first mortgage foreclosure. Note and interest have been carried on California books as an asset."

Section 23(j) of the Revenue Act of 1928, 26 U.S.C.A. § 23(j) note, provides that in computing net income there shall be allowed as deductions, among other things, debts ascertained to be worthless and charged off within the taxable year. The Commissioner charges that neither requirement has been met in this case.

■ The requirement that debts be ascertained to be worthless during the taxable year has been generally construed to allow some latitude to the taxpayer in the matter of ascertainment provided only that he exercise good faith and "not close his eyes to the obvious." Moore v. Commissioner, 101 F.2d 704, decided by the Court of Appeals for the Second Circuit, February 6, 1939, reported in C. C. H. Tax Service, par. 9294. The elements to be considered in determining whether or not the taxpayer is to be allowed the deduction have been fully discussed in the following cases, and it is unnecessary for us to enlarge upon them: Avery v. Commissioner, 5 Cir., 22 F.2d 6, 55 A.L.R. 1277; Sabath v. Commissioner, 7 Cir., 100 F.2d 569; Blair v. Commissioner, 2 Cir., 91 F.2d 992; Helvering v. Ames, 8 Cir., 71 F.2d 939; Jones v. Commissioner, 7 Cir., 38 F.2d 550; Duffin v. Lucas, 6 Cir., 55 F.2d 786. They have generally held that there is no absolute duty on the taxpayer to ascertain worthlessness, at his peril, during the same year when the debt in fact became uncollectible.

■ It must be noted that the language of the subsection of the statute relating to the deduction for worthless debts differs from that relating to losses, in that the latter must be taken as of the year in which the losses are sustained. This has been held to be fixed by an identifiable event (United States v. S. S. White Dental Mfg. Co., 274 U.S. 398, 47 S.Ct. 598, 71 L.Ed. 1120; Commissioner v. Highway Trailer Co., 7 Cir., 72 F.2d 913), the point when the physical loss actually occurred, a very different matter from ascertainment that a debt has become worthless. Of course there must be some basis for the determination that a debt has become worthless, and such determination may not be arbitrary and capricious. See Lauriston

Inv. Co. v. Commissioner, 9 Cir., 89 F.2d 327; and Ludlow Valve Mfg. Co. v. Durey, 2 Cir., 62 F.2d 508.

█ While it is difficult to envisage an outcome of the litigation between the first mortgage creditor, the attaching creditor, and the debtor which would have left any substantial interest in the debtor subject to the claim of the California Company, nevertheless it is a fact that the debtor had owned some personal property covered by the first and second mortgages which was not reached by the levy by the attaching creditor directed only against the real property. Hence, had the debtor been upheld in its contention that the mortgages were invalid, this would have left the personal property foreclosed upon under the first mortgage subject to the claims of other creditors. While the value of that personal property appears to have been wholly inadequate to cover all the other claims which might have been made against it if the financing arrangements concluded by the series of trust deeds fell, the fact that there was such personal property was an element to consider in determining whether there was any hope of any recovery on the claim, pending ultimate decision of the cases by the California court. Although the taxpayer could no doubt, have partially charged off the debt in the year 1927 after the expiration of the period of redemption from the sale under the attachment, we think it was not absolutely required to do so in order to avail itself of the deduction, but that as long as there was any possibility of any recovery, its subsidiary was justified in continuing the account on its books.

█ The Commissioner also contends that the debt was not properly charged off during the year 1929. There is no fixed mode of charge-off. The principal reason for the requirement is to prevent a taxpayer from taking advantage of the loss for tax purposes while continuing to carry the item on his books as an asset for other purposes. Anything which manifests the intent to eliminate an item from assets is sufficient to constitute a charge-off. In the case of an individual it has been held that a mental charge-off serves the purpose. See Jones v. Commissioner, 7 Cir., 38 F.2d 550; Stephenson v. Commissioner, 8 Cir., 43 F.2d 348; Shiman v. Commissioner, 2 Cir., 60 F.2d 65. Here we find an entry in the books of the taxpayer showing the debit, with an accompanying explanation which seems to us to satisfy the requirement of eliminating the item from the assets.

The Commissioner contends that proof of the charge-off by the taxpayer's books was insufficient to prove that the California Company had charged off the item from its books. However, we are of the opinion that the entry relied upon by the taxpayer sufficiently indicated the transfer of the item from the subsidiary to the taxpayer, and after transfer of the account, nothing remained in the California Company to charge off.

We therefore agree with the decision of the Board of Tax Appeals that the debt was ascertained to be worthless and charged off within the taxable year, and that the taxpayer was entitled to the deduction claimed.

Order affirmed.