## MAGRUDER, Collector of Internal Revenue, v. FIDELITY & DEPOSIT CO. OF MARYLAND.

### No. 5162.

Circuit Court of Appeals, Fourth Circuit.

Jan. 3, 1944.

As Modified on Denial of Rehearing Feb. 23, 1944.

George J. Laikin, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key and A. F. Prescott, Sp. Assts. to Atty. Gen., and Bernard J. Flynn, U. S. Atty., and T. Barton Harrington, Asst. U. S. Atty., both of Baltimore, Md., on the brief), for appellant.

E. B. McCahan, Jr., and Washington Bowie, Jr., both of Baltimore, Md., for appellee.

Before PARKER and DOBIE, Circuit Judges, and WARING, District Judge.

DOBIE, Circuit Judge.

Fidelity and Deposit Company of Maryland (an insurance corporation, hereinafter called Fidelity) filed a civil action in the United States District Court for the District of Maryland to recover federal income taxes paid by it for the year 1935. The District Court, sitting without a jury, found for Fidelity and entered judgment in its favor for the full amount claimed. Magruder (United States Collector of Internal Revenue for the District of Maryland) has duly appealed.

In September, 1931 (a time of great economic stress and extreme financial storm), the Baltimore Trust Company was in a most precarious condition. To prevent the probable collapse of this institution, which might have started a run on all the local banks, a guaranty fund of nearly eight million dollars was contributed by various individuals and corporations. Fidelity contributed $200,000 to this fund. Each guarantor received from the Trust Company a

certificate of indebtedness, bearing annual interest of 2%, but the claims of the guarantors, though superior to the rights of stockholders, were subordinated to the claims·of the Trust Company's depositors and other creditors.

On March 31, 1933, at a meeting of Fidelity's finance committee, composed of responsible executive officers, the claim against the Baltimore Trust Company was discussed and, according to the formal minutes of the meeting: "The Treasurer was authorized to charge off at the rate of $20,000 per month the $200,000 held in assets, being the amount subscribed to the Baltimore Trust Company guaranty fund. * * *" Apparently, in pursuance of this resolution, the following entries were made in Fidelity's general ledger:·

ferred this item to its Schedule X, which is a schedule of what are called unlisted assets. Items on this schedule are not included in· Fidelity's statement of admitted assets and are not considered by Insurance Commissioners in determining the solvency of Fidelity.

In its federal income tax return for the year 1933, Fidelity sought a deduction of $200,000, the entire amount of its claim against the Baltimore Trust Company, as a bad debt that was ascertained to be completely worthless. This was not questioned, but was allowed, by the Commissioner of Internal Revenue. But this did not affect the amount payable by Fidelity as income taxes for the year 1933, since Fidelity, apart from this item, still suffered a loss for that year. In its income

"Baltimore Trust Co., Baltimore, Md.
Guaranty Fund

| Date Year | Month | Day | Explanatory | Folio | Debit | Credit | Balance Debit | Credit |
|-----------|-------|-----|-------------|-------|-------|--------|--------|--------|
| 1933 | Jan. | 3 | Transferred from Ledger No. 32 | 35· | $200,000. | | $200,000. | |
| | Mar. | 31 | Reduction in Book Value as per Finance Committee Resolution Mar. 31, 1933 | C162 | | $ 20,000. | $180,000. | |
| | Apr. | 29 | Mar. 31, 1933 | C178 | | 20,000. | 160,000. | |
| | May | 31 | Mar. 31, 1933 | C193 | | 20,000. | 140,000. | |
| | June | 30 | Mar. 31, 1933 | C210 | | 20,000. | 120,000. | |
| | | | Mar. 31, 1933 | C210· | | 120,000. | 0 | |
| | | | | | $200,000. | $200,000." | | |

It will be noted that after this item had been charged off for three months at the rate of $20,000 a month (according to the resolution of the finance committee), the charge-off was accelerated by writing off the full balance of $140,000 on June 30, 1933. Presumably this acceleration resulted from the fact that, according to the testimony of Roland Benjamin, treasurer of Fidelity, Fidelity "didn't want to show that in there as a live asset". Since the resolution, adopted in March, 1933, directed a charge-off at the rate of $20,000 a month, it seems clear that the resolution contemplated a complete charge-off of the entire item of $200,000 during the calendar year 1933. During 1933, Fidelity also trans-

tax return for the year 1935, which was a profitable year for Fidelity, it again claimed on this same item a deduction for $200,000 as a worthless bad debt. This was not allowed by the Commissioner of Internal Revenue and Fidelity filed the instant civil action for a refund of the amount of its income taxes for 1935 involved in this item.

Under Section 23(j) of the Revenue Act of 1932, 26 U.S.C.A. Int.Rev.Acts, page 490, a taxpayer is allowed a deduction for "Debts ascertained to be worthless and charged off within the taxable year." We are thus called on to decide whether Fidelity, in 1933, (1) charged off its claim against the Baltimore Trust Company as a

bad debt, and (2) ascertained this claim to be worthless, so as to preclude any tax deduction of this item for the year 1935.

■ We are firmly convinced that Fidelity did charge off its claim against the Baltimore Trust Company in 1933. Seldom, in income tax practice, is a charge-off either manifested by such official action or evidenced by circumstances so definite. Here we have a formal resolution by the finance committee directing the treasurer, positively and unequivocally, to "charge off" this entire claim at the specified "rate of $20,000 per month," a definite entry on the ledger of Fidelity in pursuance of the direction of the finance committee and then the claim of deduction thereon in the income tax return for the year 1933. In Commissioner v. McDonald Engineering Co., 7 Cir., 102 F.2d 942, 945, the court aptly said: "Anything which manifests the intent to eliminate an item from assets is sufficient to constitute a charge-off. In the case of an individual it has been held that a mental charge-off serves a purpose. * * * Here we find an entry in the books of the taxpayer showing the debit, with an accompanying explanation which seems to us to satisfy the requirement of eliminating the item from the assets." See, also, American Cigarette & Cigar Co. v. Bowers, 2 Cir., 92 F.2d 596; Hamlen v. Welch, 1 Cir., 116 F.2d 413; Rubinkam v. Commissioner, 7 Cir., 118 F.2d 148.

We are not impressed by Fidelity's contention that all this was a mere inadvertent error. Members of the finance committee of an important corporation in a great industrial city, the treasurer of the corporation and those charged with the task of making out its tax returns are not mere clerical employees. Here, too, are three separate steps, the resolution, the ledger entry and the tax return, all fitting into a consistent pattern. Against this background, the transfer of the claim to Schedule X seems rather inconsequential. The expression "charge-off" at least approximates a term of art, and this expression is hardly synonymous here with "transfer to Schedule X". Apparently the finance committee knew the connotation of this term in accounting practice, and equally must this be true of the treasurer and those who prepared the 1933 tax return.

■ A more difficult problem is whether Fidelity ascertained this claim to be worthless in the year 1933. An affirmative answer, rather than a negative one, fits much more clearly into the whole picture. The taxpayer can charge off a bad debt only in the year in which the debt is ascertained to be worthless. Hence the charge-off of the item during, and its inclusion in the tax return for, 1933, must be strong evidence that Fidelity ascertained the worthlessness of that item in 1933. The circle here is not vicious but informative. As Circuit Judge Chase said in Ludlow Valve Manufacturing Co. v. Durey, 2 Cir., 62 F.2d 508, 509: "Presumably so much of these debts as were charged off in 1915 and 1916 were ascertained to be worthless in those years, else they would not then have been written off, but we merely suggest that the important fact is that, having been previously charged off, they could not be written off again in 1918."

Fidelity insists that its claim against the Baltimore Trust Company did not become definitely worthless until 1935, when that company was judicially pronounced to be insolvent. We think the claim had become definitely worthless in 1933. Then Fidelity further contends that there were in 1933 no "identifiable events or attendant circumstances" (see Bartlett v. Commissioner, 4 Cir., 114 F.2d 634, Helvering v. Smith, 4 Cir., 132 F.2d 965) which support the ascertainment in 1933 of the worthlessness of this claim. With that we cannot agree.

In the Bartlett case, supra (in which we affirmed a finding of the Board of Tax Appeals that the stock of the Baltimore Trust Company became worthless in the year 1933), we discussed at some length the situation of the Baltimore Trust Company during that year. Much that we said there (mutatis mutandis, which is not here a major operation) is applicable to the instant case. Among the "identifiable events and attendant circumstances" we might point out: (1) The closing of the Trust Company in February, 1933; (2) the taking charge by the Maryland Bank Commissioner of the affairs of the Trust Company and the fact that it never thereafter resumed normal operations; (3) the very restricted basis upon which the Trust Company was permitted to re-open; (4) the freezing of deposits. There was also introduced as evidence in the instant case a report by the Federal Reserve Bank of Richmond on the affairs (in 1933) of the Union Trust Company of Baltimore, in which the guaranty claim of the Union Trust Company against the Baltimore

Trust Company was appraised as having no value whatsoever. True, it was not shown that notice of this report was brought home to Fidelity. One officer of Fidelity was one of the members of an advisory committee formed to reorganize the Baltimore Trust Company and given supervision of its assets and voting control of its stock. The officers and directors of Fidelity, which had contributed $200,000 to the guaranty fund of the Baltimore Trust Company, certainly must have been cognizant, at least in a general way, of the Trust Company's general situation in 1933. And it is a fair presumption that Fidelity's finance committee, when it directed the charge-off in 1933, knew not only what it was doing but also why it was done.

Fidelity contends that the Commissioner of Internal Revenue is guilty of inconsistency in that other items, having a status similar to the guaranty claim against the Baltimore Trust Company, were permitted to be charged off by Fidelity in years subsequent to 1933. That argument has little substance. A generous indulgence by the Commissioner in one year does not insure greater and more generous indulgences in years to come.

The broad equities of the instant situation, we think, do not favor Fidelity. In 1933, Fidelity formally charged off this item, claimed and was allowed a deduction therefor, though Fidelity received no economic benefit, in the way of a diminution of its taxes, from the deduction. Then, when 1935 is a prosperous year, so that the allowance again of a deduction would reduce its taxes, Fidelity claims that this item must live again, though once it was dead; that phoenix-like, it can rise once more from its ashes of the past. We do not look with favor upon such a resurrection.

The judgment of the District Court is reversed.

Reversed.