## FIRST NAT. BANK OF FORT WORTH v. COMMISSIONER OF INTERNAL REVENUE.

### No. 10771.

Circuit Court of Appeals, Fifth Circuit.

Feb. 28, 1944.

Warren Scarborough, of Fort Worth, Tex., for petitioner.

Ray A. Brown, Sewall Key, and Warren F. Wattles, Sp. Assts. to the Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., and J. P. Wenchel, Chief Counsel, Bureau of Internal Revenue, and John M. Morawski, Sp. Atty., Bureau of Internal Revenue of Washington, D. C., for respondent.

Before SIBLEY, McCORD, and WALLER, Circuit Judges.

McCORD, Circuit Judge.

The Tax Court denied the First National Bank of Fort Worth, Texas, a deduction on income taxes for the calendar year 1938, and it petitions for review.

The question: Did the Tax Court err in denying taxpayer a deduction under Section 23(k) of the Revenue Act of 1938, 26 U.S.C.A.Int.Rev.Acts, page 1013, in the sum of $52,219.11 for the year 1938 on account of a debt owed the taxpayer by the First National Bank of El Paso, Texas?

Statute and Regulations involved: Revenue Act of 1938, c. 289, 52 Stat. 447, Sec. 23, 26 U.S.C.A.Int.Rev.Acts, page 1011; Treasury Regulations 101, promulgated under the Revenue Act of 1938, Art. 23(k)-1; Treasury Decision 4633 and related regulations under Revenue Act of 1932, 1934, and 1936.

The pertinent facts: First National Bank of Fort Worth, Texas, had on deposit $176,786.10 with the First National Bank of El Paso, Texas, when that bank failed and closed its doors on September 4, 1931. Through its receiver, the El Paso bank paid to taxpayer three successive dividends in liquidation from the time it failed until a final payment in June of 1938. During this period the taxpayer bank made charge-offs on its books of a part of the account with the El Paso bank at the direction of the bank examiner. The last charge-off directed by the national bank examiner was that of $58,550, which was ordered in December, 1932, and at that time the examiner valued taxpayer's then account against the El Paso bank at $35,200.27 and directed that the excess, that is, $58,550, should be charged off shortly after the first of the succeeding year. Taxpayer made this charge-off. The Fort Worth bank received a dividend of $29,464.35 on February 4, 1934, and the balance of the El Paso bank account on taxpayer's general ledger was transferred to its active securities ledger.

At the direction of the bank examiner taxpayer charged off as bad debts in the years 1931 and 1932 the sum of $30,000. Prior to 1938 taxpayer had not taken a deduction in any return for partial losses except the $30,000. The unrecovered and unrecoverable balance of taxpayer's El Paso bank account was ascertained to be $83,219.11. In its return for 1938 taxpayer deducted $53,219.11 as a bad debt deduction.

The Tax Court approved the findings of the Commissioner and held that taxpayer "is not entitled to the deduction (of $53,219.11 in 1938) for failure of proof".

Prior to the Revenue Act of 1921 no deduction could be taken for partially worthless debts. Only those debts which became entirely and totally worthless could be deducted from income. However, in 1921 Congress first added a clause to the Revenue Act which provided, "And when satisfied that a debt is recoverable only in part, the Commissioner may allow such debt to be charged off in part." Revenue Act of 1921, Sec. 234(a)(5), 42 Stat. 254. This added provision for bad debts was reenacted from time to time and appears in Revenue Act of 1938 in Sec. 23(k).

The law now seems to be well settled that where a loss is ascertained to be total it must be deducted in that year in which it is found to be worthless. However, where partial loss is shown in certain years, as here, and such loss is uncertain and partial, and continues uncertain and partial until a future year, the taxpayer may in that future year, when it becomes and is ascertained to be wholly worthless, charge off such debt and deduct it from its taxable income in that year.

It was the duty of the taxpayer bank to charge off such amounts as the bank examiner directed to be charged off, and this taxpayer did. Of course, every depositor of the defunct El Paso bank knew that he must take a loss, but what that loss would be was problematical. The receiver

was making settlements, collecting debts and bringing suits in an endeavor to reduce loss, but what that loss would finally aggregate was not ascertained until the day of final settlement by the receiver. The receiver made three different payments by way of liquidation to taxpayer bank and did not make the final payment until June of 1938. Taxpayer was not permitted to carry the account owed it by the El Paso bank on its general ledger as a live account, but it is manifest that it regarded the deposit of value, since it was by taxpayer transferred to its active securities ledger, where it was kept until the final amount was paid to it by the receiver in 1938.

That the taxpayer bank of its own motion on December 30, 1933, charged off the sum of $6,000 is not evidence that the bank regarded this as an additional and ascertained loss over and above the amount ordered charged off by the bank examiners. It was necessary to write down many of the assets of the bank which were slow as distinguished from worthless in order to cooperate with the program then being fostered by the Reconstruction Finance Corporation. This charge-off shows conclusively, we think, that the taxpayer bank was still holding the belief that much of the account could be salvaged and given an added value by dredging up seemingly worthless securities that had gone down in the crash.

■ The Tax Court found that "No charge-offs in the accounts were made in taxable year 1938." This was error. The evidence is without dispute that such charge-off was made in that year. A page taken from the active securities ledger of the taxpayer bank shows an entry dated June 27, 1938 of $11,066.81, which was the final dividend just received, and after this deduction, an entry is shown: "$83,219.11 (Amt loss)"; below this, another entry: "52.93% Paid—($93,566.99)." The evidence is further without dispute that this sheet was taken from the active securities ledger and placed in the dead files of taxpayer's books.

This certainly complied with the statute. Commissioner v. McDonald Engineering Co., 7 Cir., 102 F.2d 942; American Cigarette & Cigar Co. v. Bowers, 2 Cir., 92 F.2d 596; Jones v. Commissioner, 7 Cir., 38 F.2d 550; Stephenson v. Commissioner, 8 Cir., 43 F.2d 348; Shiman v. Commissioner, 2 Cir., 60 F.2d 65; Georgia Engineering Company v. Commissioner of Internal Revenue, 21 B. T. A. 532.

■ We are of opinion the Tax Court erred when it found and held that the charge-offs ordered by the bank examiner were to be taken as ascertained and total loss when such orders were made. This is not correct. The bank examiner was calling upon the bank to bring its accounts within the very strict rules as laid down by the Federal Reserve Bank. It must not be taken that his orders to charge off spelled an ascertained final loss. At the time the first of these charge-off orders were made one could conclude that the loss would be very high, but long after they were made liquidation dividends kept coming in and were paid until the last dividend payment was made in June, 1938. The taxpayer bank, realizing that this account was far from a total loss, kept it on its active securities ledger.

■ From the day the El Paso bank closed until its final liquidation by the receiver the record fails to disclose that the account of taxpayer was wholly and totally worthless. No one could determine and no one has pointed accurately to what the final dividend would be prior to the year 1938. On that day the taxpayer bank showed and deducted a loss of $53,219.11, in excess of the $30,000 heretofore adverted to, and the debt to that extent having been ascertained to be totally and wholly worthless for the first time in 1938, and it having been charged off the books of the taxpayer bank in that year, the Tax Court erred in disallowing the deduction. General Counsel Memorandum 18525, C.B. 1937-1, page 80; Moock Electric Supply Co. v. Commissioner, 41 B. T. A. 1209; Bingham v. Commissioner, 2 Cir., 105 F.2d 971; Blair v. Commissioner, 2 Cir., 91 F.2d 992; American Cigarette & Cigar Co. v. Bowers, 2 Cir., 92 F.2d 596; Commissioner v. McDonald Engineering Co., 7 Cir., 102 F.2d 942; Peerless Oil & Gas Co. v. Heiner, 3 Cir., 81 F.2d 391.

The Tax Court will enter a decree awarding the taxpayer a deduction in its 1938 tax return of $53,219.11.

Reversed and remanded.