American Bonding and Casualty Company, Complainant, v. Chicago Bonding & Insurance Company et al., Defendants.

William A. Murphy, Director of Trade and Commerce of Illinois, Cross-Complainant, v. Chicago Bonding & Insurance Company et al., Cross-Defendants.

Leonard A. Brundage, Receiver of Chicago Bonding & Insurance Company, Appellee.

Appeal of Louis Schwartz et al., Appellants.

Gen. No. 33,043.

550

Heard in the second division of this court for the first district at the October term, 1928. Opinion filed February 14, 1929.

EDWARD C. TURNER, Attorney General, and C. S. YOUNGER, Assistant Attorney General, for State of Ohio, appellant.

HARRY A. BLACHMAN, for certain other appellants.

WETTEN, PEGLER & DALE, for appellee.

MR. PRESIDING JUSTICE GRIDLEY delivered the opinion of the court.

On May 8, 1928, the superior court, following the recommendation of the master, entered an order or decree allowing the respective claims of four individual claimants of Ohio, viz., Schwartz, $1,242.50, Dudley, $1,512.90, Zaslavsky, $4,431.70, and Mitchell, $1,465, and also allowing two claims (consolidated and compromised by stipulation) of the State of Ohio in the sum of $50,000. The court found that prior to 1920, the Chicago Bonding & Insurance Company, an Illinois corporation (hereinafter referred to as the Chicago Co.) was authorized by the State of Ohio to do business in that State; that before it could there commence actual business, it was required to deposit with the insurance commissioner of that State cash or securities amounting to $50,000, "as a special fund for the protection of policyholders *residing within the State of Ohio*"; that when its subsequent insolvency became known a receiver was appointed in Ohio to administer the fund; and that, as a result of proceedings there had said claimants, who had there filed their claims, "were paid a dividend of 19½ per cent by said Ohio receiver." And the court further ordered that Leonard A. Brundage, receiver herein, do *not* pay any divi-

dends on the claims of said five Ohio claimants "until the *remaining* claimants herein have received a dividend equalling 19½ per cent"; and that when they shall have received such a dividend, the Ohio claimants "shall be entitled to share in the *remaining* assets in the hands of said receiver on the same basis as the remaining claimants and said receiver shall pay a dividend accordingly."/ From this order or decree the Ohio claimants prayed and perfected the present appeal.

The only question involved is whether, as regards a large fund now in the hands of the receiver herein, the court erred in entering said order or decree. The Ohio claimants here contend in substance that the Ohio *special* fund of $50,000 was *not an asset* of the Chicago Co., but was in the nature of "collateral security" for the sole benefit of its Ohio policyholders; and that they had the right to participate with all of the other creditors of the Chicago Co. in a *general* fund, now in the hands of the receiver herein, *after* they had exhausted the Ohio special fund "which was held in trust for them alone." On the other hand the receiver contends in substance that the fund now in his hands is a *special* fund, just as was the Ohio fund of $50,000 before its distribution; that both funds were assets of the Chicago Co., and were originally deposited by it in compliance with statutes; that while the Ohio fund was for the protection of Ohio policyholders only, the fund now in the hands of the receiver herein was, as provided by the Illinois statute, "for the special and sole benefit and security of *all* of the company's creditors and holders of its obligations and contracts of suretyship, guaranty and indemnity"; that the Ohio fund did not possess the usual characteristics of collateral security; that the Ohio claimants to the present fund are of the same general class as those of the many other claimants thereto, who were not permitted under the

Ohio statute to participate in the Ohio fund; that "equality is equity"; and that it would be inequitable for the Ohio claimants to receive dividends on the full amount of their claims, thus giving them an advantage over other creditors of the same general class to the extent of the 19½ per cent recovered in Ohio.

A number of years ago the Chicago Co. deposited certain securities with the insurance superintendent of Illinois. This was done in compliance with section 6 of an act "to provide for the organization, management and regulation of surety companies," in force April 17, 1899 (Cahill's St. 1927, ch. 32, ¶ 325). After July 1, 1917, the director of the department of trade and commerce of Illinois became possessed of these securities in trust. About March 2, 1920, the Chicago Co. became consolidated with the American Bonding and Casualty Company, an Iowa corporation (hereinafter referred to as the Consolidated Co.) under the latter's name. The Chicago Co. ceased doing business in Illinois and abandoned its right to do so. All of its debts and liabilities on policies, indemnity bonds, etc., were assumed by the Consolidated Co., and all of its property and assets, except said securities, were removed to Iowa and taken possession of by the Consolidated Co. On November 3, 1920, the Consolidated Co. filed a bill in the superior court of Cook county (the commencement of the present litigation). The main purpose of the bill was to secure an order of a court of competent jurisdiction for the surrender to it of said securities, then held by said director, and which then amounted at their par value to $305,334. Said director filed a cross-bill, alleging that the Chicago Co. had no property in Illinois except the securities and that it was indebted to many persons on its issued policies, and praying that a receiver be appointed to take possession of the securities, to settle claims, and do all things necessary to wind up the affairs of the

company. A protracted litigation followed. Subsequently, the Chicago Co. and the Consolidated Co. both became insolvent and, on January 24, 1921, a receiver for the latter was appointed by an Iowa court and thereafter he was substituted as complainant herein and he filed an amended and supplemental bill. Finally, on February 4, 1922, a decree as to the main issues was entered herein, sustaining the prayer of the director's cross-bill, and directing that Leonard A. Brundage, receiver, take charge of the securities, and out of the fund, as far as it would go, pay the allowed claims of bona fide policyholders and creditors of the Chicago Co. The decree was affirmed by this Appellate Court on November 8, 1922 (226 Ill. App. 475). Certiorari was denied by the Supreme Court.

During May, 1921, an action was commenced in a court in Franklin county, Ohio, on behalf of the Superintendent of insurance of that State against the Chicago Co., for the purpose of obtaining distribution of the $50,000 fund (in the form of securities) which the Chicago Co. had deposited with the superintendent prior to its doing business in that State. The receiver herein and the Iowa receiver each attempted to obtain possession of the deposit. But the court, on December 26, 1926, held that under the Ohio statute, the deposit was "for the special benefit and security of the policy holders of the company, *whose policies were issued or delivered within the State of Ohio.*" In that suit the five Ohio claimants herein had filed their claims, as had others whose policies had been issued and delivered within that State, and their claims (except the smaller of the two claims of the State of Ohio) were allowed, and a dividend of 19½ per cent was ordered paid to them, which they each thereafter received. These dividends exhausted the fund.

Many claims of policyholders and creditors of the Chicago Co. were filed with the receiver herein. By

order of the superior court all claims were referred to a master for hearing and recommendation as to allowance or disallowance. In September, 1927, the master reported favorably as to the allowance of many claims, including those of the four individual Ohio claimants. Objections were filed by Illinois creditors to the *payment of dividends* on the claims of said *four* claimants. In the meantime the solicitors for the receiver and those for the State of Ohio had entered into a stipulation, with the court's approval, by the terms of which the aggregate amount of the State's two claims was reduced from $154,960 to $50,000, which latter sum was to be taken as the basis for distribution. Thereafter the claims of the *five* Ohio claimants were re-referred to the master to ascertain and report what dividends on their claims they had received from the distribution of the $50,000 Ohio fund above mentioned, and also to recommend the amount of dividends, if any, they should receive out of the fund in the hands of the receiver herein. In the master's final report, filed March 31, 1928, after reviewing the facts and the contentions of the opposing parties, he recommended that the claims of the *five* Ohio claimants should be allowed, but that no dividends should be paid by the receiver, Brundage, on any of the claims *until* claimants other than those from Ohio had been paid dividends aggregating 19½ per cent. The master stated in his report that it was the well-settled rule, in the settlement of insolvent estates by courts of equity, that after payment of administration expenses the assets remaining should be distributed equally among those whose claims had been allowed, *except* in cases where the court had determined that some claimants were entitled to first be paid in full because of facts which in law or equity had created a right in their behalf to a priority or preference over general creditors; that the Ohio claimants in this proceeding "have not

sought to have their claims established as prior or preferential to other claimants''; that if their contentions be sustained the effect will be to give each of them a preference over claimants not residing in Ohio in the assets of the Chicago Co.; that even though the fund deposited with the insurance department of the State of Ohio was a special fund, ''it nevertheless constituted and was a part of the assets of the company, subject only to be first applied to the payment of claims arising in Ohio''; that the mere fact that the Ohio fund was handled and distributed by a receiver appointed in Ohio does not take it from the category of *assets* of the Chicago Co.; and that (for illustration) it would be inequitable and unjust to pay, out of the assets of the Chicago Co., only a total dividend of 30 per cent, and at the same time allow a dividend at the same ratio to the Ohio claimants, who thereby would ultimately be paid to the extent of 49½ per cent of their claims. The exceptions of the five Ohio claimants to the master's report were overruled, the report confirmed in all respects by the court, and on May 8, 1928, the order or decree appealed from was entered. Counsel state in their briefs here filed that the fund in the hands of the receiver is sufficient to pay about 25 per cent on the allowed claims.

After reviewing the present record and considering the printed and oral arguments of counsel for the respective parties, we think that the master's recommendation was in accord with equitable principles and that the decree of the superior court, following the master's report, should be affirmed. It is clear to us that both special funds, the one in Ohio and the one in Illinois, were *assets* of the Chicago Co. In *Scottish Union & National Ins. Co. v. Bowland,* 196 U. S. 611, the court had occasion to construe the Ohio statute, or a former similar one, and said (p. 622): ''As a condition of doing business in Ohio, companies organized

under the laws of foreign governments are, by § 3660, required to invest a portion of their capital in the stock or bonds of the United States or of the State of Ohio, or some municipality or county thereof, and make deposit of such bonds with the superintendent of insurance for the benefit of *local* policyholders. Subsequent provisions of the section further show that this deposit is to be regarded as a *part of the capital* of such foreign insurance company, which may be considered in determining the aggregate capital of the company required by law. The companies are permitted to collect the interest or dividends on the securities. These deposits constitute a fund primarily for the benefit of such policyholders, and after their claims are satisfied may be turned over to an assignee or devoted to other purposes. *Falkenbach v. Patterson,* 43 Ohio St. 359, 1 N. E. 757; *State v. Matthews,* 64 Ohio St. 419, 60 N. E. 605.'' In the present case it appears that the $50,000 Ohio fund, deposited by the Chicago Co. under the Ohio statute, was, in proceedings had in an Ohio court, distributed to Ohio policyholders as far as it would go, and such policyholders, including the five claimants (appellants), received dividends of 19½ per cent on their respective claims. They received these dividends because of the Ohio statute. The five claimants afterwards filed claims in the present proceeding and demanded in an Illinois court *additional* dividends out of similar assets of the Chicago Co., *pro rata* with other claimants of the same general class, but which latter claimants have thus far not received anything out of any of the assets of the company. We do not think that their demand is in accord with the policy of the law in Illinois, or generally. The case of *Ramsay v. Ramsay,* 196 Ill. 179, cited by the receiver's counsel, involved the distribution of the property of a deceased insolvent debtor, who at the time of his death resided in Clinton county, Illinois, and left property in this State and also

in the State of Missouri. Two claimants, who had filed their claims in the probate court of Clinton county, recovered about 12 per cent of their respective claims from assets in Missouri in proceedings had in that State, and afterwards sought to recover *full distributive shares* of the assets in Illinois. The probate court refused to allow this, and, on appeal to the circuit court, the administrator of the estate was directed to pay all claimants, except said two claimants, 12 per cent on their claims, thus making all claimants equal with them, and to then distribute the *balance* in his hands ratably among *all* claimants of the seventh class. The Appellate Court affirmed the judgment and an appeal was taken to the Supreme Court where it again was affirmed. The court said (p. 185):

"It is insisted by appellants that they are entitled to receive full distributive shares of the assets reported by the administrator to the probate court of Clinton county without in any way being charged with the amounts received from the Missouri assets. The proposition is so manifestly unjust to other creditors of the insolvent estate that it should be sustained only in obedience to strict and imperative requirements of the law. The general policy of the law in all jurisdictions, so far as we are aware, is, that all the property of a deceased insolvent debtor not set apart for the widow or minor children shall become assets in the hands of his administrator for the payment, *pro rata,* of all his debts according to classification, no matter where the assets may be found or the creditors reside. In *Dawes v. Head,* 3 Pick. 128, it was said by Parker, Judge: 'We cannot think that in any civilized country advantage ought to be taken of the accidental circumstances of property being found within its territory which may be reduced to possession by the aid of its courts and law, to sequester the whole for the use of its own subjects or citizens, and where it shall be known that all

the estate and effects of the deceased are insufficient to pay his just debts. Such a doctrine would be derogatory to the character of any government.' . . . Unless, therefor, appellants have shown that their claims are in some way exceptions to the general rule, the judgment of the circuit court is right and should be affirmed.''

And the court, in the opinion (p. 186), discussed the contention of the two claimants' counsel to the effect that they were entitled to a *preference* over other creditors, as to the Missouri assets, on the principle that a creditor should be allowed to prove his whole debt without regard to any collateral security he might hold, and be entitled to a dividend on the whole claim so allowed, and the court also referred to three Illinois decisions cited by said counsel. And the court said: ''No argument seems necessary to show that the doctrine of these cases can have no application to the question at issue.'' And we fail to see how the doctrine in these cited cases (one of which, *Levy v. Chicago Nat. Bank,* 158 Ill. 88, is cited by appellants' counsel in their brief here filed) is applicable to the question before us. While the Ohio fund of $50,000 was held in trust for the benefit of Ohio policyholders only, the fund now in the hands of the receiver herein also was a trust fund for the benefit of all creditors of the Chicago Co. Both were assets of the company. We cannot see that either fund had or has the characteristics of ''collateral security,'' such as appeared in the *Levy* and the other cases referred to. And the Supreme Court further said in the *Ramsay* case (p. 188): ''It is to be observed that these appellants are not content with what the Missouri court gave them, but come into the probate court of Clinton county and demand that they shall be allowed to participate in the assets in the hands of the appellee, the resident administrator. Having done so, we entertain no doubt that the latter court had the power, and that it was its duty, to require them to

*account* for that which they had received under the Missouri administration, and to order a distribution *pro rata* among all the seventh-class creditors.'' The principles enunciated in the *Ramsay* case have been announced in decisions in other States and held also applicable in the distribution of assets of an insolvent corporation. (*Estate of Hanreddy,* 176 Wis. 570, 575–577; *Buswell v. Supreme Sitting of Order of Iron Hall,* 161 Mass. 224, 232; *Thornley v. J. C. Walsh Co.,* 207 Mass. 62, 65.)

And we do not think there is any substantial merit in counsels' contention that the court erred in approving the master's report because no objection was filed by any Illinois creditor or policyholder against the claim of the State of Ohio. Considering the manner in which the present issues were raised in the superior court no such objection was necessary. Other similar Ohio claims had been objected to. The question as to what *dividends* the five Ohio claimants should receive, if any, was referred by the court to the master to ascertain the facts and report his conclusions. This the master did, recommending that all said claimants should not receive dividends until all other allowed claims had received 19½ per cent. To this report, of course, the claimants *other* than those from Ohio had no objection.

Our conclusion is that the order or decree of the superior court, entered May 8, 1928, should be affirmed, and it is so ordered.

*Affirmed.*

SCANLAN and BARNES, JJ., concur.