## SABATH v. COMMISSIONER OF INTERNAL REVENUE.
### No. 6565.

Circuit Court of Appeals, Seventh Circuit.
Dec. 1, 1938.

Llewellyn A. Luce, of Washington, D. C., for petitioner.

James W. Morris, Asst. Atty. Gen., and Sewall Key and Berryman Green, Sp. Assts. to Atty. Gen., for respondent.

Before SPARKS and MAJOR, Circuit Judges, and LINDLEY, District Judge.

### LINDLEY, District Judge.

Petitioner seeks to reverse a decision of the United States Board of Tax Appeals sustaining the commissioner's determination of a deficiency in petitioner's federal income tax for the year 1929, arising from the disallowance of deductions for bad debts and losses made by petitioner in his tax return for that year. The Board found that the taxpayer had failed to prove that the losses were sustained in 1929 or that the bad debts were ascertained by him in that year to have been uncollectable. The facts are not greatly in dispute, as they depend largely upon the testimony of petitioner himself.

The first debt deducted as worthless arose out of a note given by one Stevenson in the amount of $1,060 in early 1918, payable in 90 days. Stevenson was a man without property, who had never been able to pay the note and was without financial responsibility or promising prospects. The note was barred by the statute of limitations of Illinois in 1928. Stevenson's father-in-law, a man of repute and responsibility, had said that he would pay the note, but his promise was not in writing and was without legal consideration. When he broke with his son-in-law in 1929, petitioner charged off the debt. The taxpayer at all times knew that Stevenson was dependent upon his father-in-law and the Board found that a prudent business man, under the circumstances recited, would have given up all reasonable hope of recovery before 1929. In view of the statute of limitations, action upon the note was barred in 1928. There being then no possible hope of legal recovery,

it seems obvious that the Board rightly held that the debt was ascertained to be worthless at least as early as 1928. We find nothing justifying us in concluding that the Board erred in its application of these facts to the law.

Petitioner also deducted the amount of an unpaid draft executed by the Union Securities Company, one Green and one Reich, in December, 1919, payable to petitioner, for $10,000. He testified that he purchased a block of oil acreage in Kansas; that he expended therefor considerably more than $10,000; that he agreed with Green and Reich of Pittsburgh, who were the executive officers of the Union Securities Company of that city, to convey his acreage to the Liberty Texas Oil Company for $10,000. For this he received the draft, which was not honored. The Liberty Texas Oil Company drilled a dry well and the venture proved a failure. Petitioner collected nothing from and, so far as the record shows, had no cause of action against that company. The Union Securities Company dissolved in 1925 without payment of the item. Petitioner placed the draft in a file, marking thereon the date of the expiration of the statute of limitations, 1929. In the meantime he made many trips to Pittsburgh to see Green and Reich in attempts to collect but could locate no recoverable assets. He saw Green many times in Chicago. Reich died in 1929 and Green, who had been president of the Union Securities Company, he was not longer able to locate. Petitioner testified that he was hoping that either Green or Reich would pay the note and that in conferences they repeatedly promised they would pay him "just as soon as they could make a turn and get hold of the money." As the operation of the Liberty Company had proved unsuccessful and the Union Securities Company had failed, petitioner looked to the two individuals. They had handled the stock of the Liberty Company. After Reich's death in 1929, petitioner and his employees attempted to locate Green once more but were unable to do so. He concluded that there was no further hope for recovery and the statute of limitations having run, charged off the debt.

The Board found from this evidence that the taxpayer did not prove "a vital element of the acquisition of loss" for the reason that he did not show the cost of the holding, but his uncontradicted testimony is that he expended considerably more than $10,000 in obtaining the acreage and developing it. Consequently the finding of the Board in this respect is sustained by no evidence.

The Board found further that the average prudent business man would have regarded the debt as worthless before 1929 and that it could not be rightfully said to have been ascertained to be worthless in that year.

The language of the statute justifying charging off a bad debt is that it shall be deducted when ascertained to be worthless. Congress failed to state by whom it must be ascertained to be worthless and, in view of the liberality extended to taxpayers in construing revenue laws, must have intended that the person making the return might exercise his discretion, provided he do so fairly and honestly. The statute of limitations itself does not necessarily determine the worthlessness of a debt, for it may be renewed by a subsequent promise. But in the absence of such, when the period of limitation has expired, success in a legal action is no longer reasonably to be expected. The undisputed evidence of petitioner is that he kept the draft in a live file marked ahead for the end of the period of the statute of limitations and that when that date arrived, upon investigation he found that Green had disappeared and that Reich had died in 1929. Though he never knew of assets held by the parties, he testified that in many conferences, in his attempt to collect prior to 1929, the parties assured him that they would pay him as soon as they got the money.

We do not believe this evidence is sufficient to support a finding that the taxpayer as a reasonably prudent man was bound to ascertain that the debt was worthless prior to that year. As a business man he still owned a bill of exchange upon which these two men were liable. They continued to promise to pay when able and most prudent business men in such situations would retain the asset and endeavor to collect it. The statute contemplates a situation with which the taxpayer is confronted and certainly he is made in the first instance, judge of the worthless character of the debt and when he in good faith believes that the legal situation is such, considering all the sur-

rounding and attendant circumstances, that there is no reasonable hope of probability of recovery, he is justified in treating the debt as worthless. Motter v. Smyth, 10 Cir., 77 F.2d 77. The real question which confronts us is not when did the debt become worthless but when did the debtor ascertain it to be worthless. Jones v. Commissioner, 7 Cir., 38 F.2d 550. Applying these principles of law, the testimony of petitioner, which is undisputed, it seems to us, furnishes no basis for the ultimate finding of the Board.

■ Shaw & Allen, Inc., was organized by petitioner, and he acted as its counsel. He made advances to the corporation at the request of two individuals interested therein, Schreiber, his uncle, and one Guthmann. The company was engaged in the manufacture of clothing; was unsuccessful and ceased operation in 1924 or 1925. Its properties passed to the mortgagee. There was then owing petitioner for advances $978.57. Schreiber and Guthmann, on December 2, 1924, entered into a written contract whereby they agreed to indemnify and reimburse petitioner for the sums he had advanced to Shaw and Allen. Under the statute of limitations of the state of Illinois, action might have been brought thereon at any time within ten years. Ill.Rev.Stat.1937, c. 83, § 17. Apparently neither Schreiber nor Guthmann were men of property in 1924 or thereafter. Petitioner endeavored to help Schreiber in other projects but without success. Guthmann died sometime, not shown by the evidence, prior to 1929 and in that year Schreiber prepared to file a petition in bankruptcy. Thereupon, though the statute of limitations had not run, petitioner, seeing no hope for future recovery from either Schreiber who was bankrupt or Guthmann who was dead, charged the debt off as worthless. We see from these facts no basis for inference that a prudent business man would have charged the debt off as worthless prior to that time, and there was no substantial evidence to support a finding that petitioner had not proved his allegation in that respect.

■ In addition to the foregoing debts charged off as worthless, petitioner made other deductions for losses sustained in 1929. Among these was $6000, representing the cost of petitioner's stock in Betty Amusement Company and certain advances made by petitioner to that company. In the years 1922 and 1923, Tischman and O'Neill were the vaudeville agents in Chicago promoting the interests of the Four Marx Brothers. Petitioner made advancements to them and to the Marx Brothers for the benefit of those parties and the corporation controlled by them, the Betty Company, and received stock in the latter which was treated by the parties as evidence of advances to be returned to the taxpayer in cash. The corporation met with failure, and before 1929 Tischman and O'Neill promised orally to reimburse petitioner but never did so. Petitioner testified that he had no legal basis for action against them. The Marxes assigned to him their claim against Shuberts, the theatrical promotors, but he never brought suit thereon, did not pursue it and made no effort to collect it. The record is not clear as to the fate of the Shubert Company. Apparently it is undisputed that receivers were appointed but what transpired in the proceeding is not shown. The record is silent as to whether, if the claim had been prosecuted, there could have been any recovery, and whether, if judgment had resulted, it could have been collected. If it could not have been collected, there is no showing as to when the debtor should have ascertained the fact. Clearly the oral promise of Tischman and O'Neill was at all times valueless in a legal sense. The record discloses no facts justifying the conclusion that petitioner sustained the loss in 1929.

■ Petitioner was a stockholder in the Federal Paving Company, his investment costing him $3500. This amount he deducted as a loss in 1929. The company built roads in Illinois and in Indiana and under certain of its contracts lost a great deal of money and became insolvent. It, thereupon, in 1925, presented a claim to the State Highway Department of the State of Illinois in the sum of $133,000. Later suit was brought upon this claim in the Court of Claims of Illinois, pursuant to the statutes of that state. That court, in 1928, rejected the demand and that decision was the end of any possibility of legal recovery. These facts justified only the ultimate finding that the asset became worthless in 1928, and that the petitioner, aware of this legal failure of the claim by its denial by the Court of Claims, then sustained the loss and could not assert thereafter that it accrued in 1929.

Petitioner relies upon an attempt made in 1929 to procure special legislation authorizing reimbursement by the state to the Federal Paving Company for its losses on state contracts. This effort failed in that year. But this occurrence did not postpone the sustainment of the loss. When in 1928, the insolvent company, without assets, was defeated in its last hope for recovery by a denial of the claim by the Court of Claims, the stock in the company ceased to have any value. The hope that the legislature of the state of Illinois might thereafter enact legislation which would amount to an appropriation of funds for the Paving Company's benefit is without legal significance in the practical disposition of the date of the sustainment of the loss. There was no error in the Board's conclusion in this respect.

█ Petitioner owned stock in the Chicago Bonding & Surety Company purchased in 1915 for $7500. This he deducted as a loss in 1929. Prior to 1922 the company consolidated with an Iowa Company of similar character. For the consolidated company, a receiver was appointed. In the meantime certain stockholders of the Chicago Company had opposed consolidation with the Iowa Company, and, if their contentions in this respect had prevailed, assets delivered to the Iowa Company and certain trust funds deposited with the Illinois authorities would have been retained by the Chicago Company, as a fund for its creditors and stockholders. Otherwise the company was without assets sufficient to satisfy its debts, and its stock wholly worthless. But the final decision of the Illinois courts on November 8, 1922, was that the consolidation was valid, American B. & C. Co. v. Chicago B. & Ins. Co., 226 Ill.App. 475, certiorari being denied by the Supreme Court of the State of Illinois. Thereafter, admittedly, the stock of the Chicago Company was of no value. The later decision cited by the taxpayer, American B. & C. Co. v. Chicago B. & Ins. Co., 251 Ill.App. 549 was merely a contest between the Ohio creditors and those of Illinois involving their respective priorities in certain funds. The record is devoid of evidence that the stock had any value subsequent to the receivership of the consolidated company in 1924. Consequently the Board was correct in saying that petitioner had not proved that he sustained the loss in 1929.

█ In 1922 the taxpayer at a cost of $5000 acquired stock in Simon-Felsenthal Company, Incorporated, engaged in the manufacture of clothing. Simon and Felsenthal, principal stockholders, were active in the conduct of the business in 1924 and 1925 and were clients of petitioner. Not being prosperous, in 1924 and 1925, consolidation was made with a St. Louis Company under the name of Simon-Felsenthal-Levy Kransberg. The Chicago plant was abandoned and the site of operation transferred to St. Louis. So far as the record discloses, plaintiff had no interest in the consolidated company. At any rate it dissolved and went out of business in 1927, at which time it had no visible assets over and above its liabilities to creditors. The record is silent as to any holding of petitioner in the consolidated company. It seems obvious that the taxpayer's loss had fully matured as early as 1927, and that he did not show that he was justified in deducting it as sustained in 1929.

Taxpayer in 1918 acquired an interest in the Cardey Royalty Trust paying therefor $5000. This company was producing oil and had some fifteen active wells. Until about 1925, dividends were substantial; thereafter they were meager, being $1.60 and $2.00 in 1925, and from then to 1928 dividends did not exceed $5.00. In 1929, petitioner, through investigation of the party from whom he had purchased the interest and who was actively interested in the trust, learned that drilling was being abandoned and that no further runs of oil were to be expected. The company was going down hill in the years 1925, 1926, 1927 and 1928 and when the company, in the year 1929, abandoned its runs and had no substantial assets remaining over and above its liabilities, petitioner deducted the investment as a loss. This, the Board held, was not justified but we find no evidence supporting such conclusion.

█ The action of the petitioner is to be judged by the conduct of a reasonably prudent business man. He is presumed to know what any prudent person ought to know when facts are to be brought to his attention and to act honestly thereon. Avery v. Commissioner, 5 Cir., 22 F.2d 6, 55 A.L.R. 1277. Only such losses are deductible under the statute as are fixed by identifiable events. United States v. S. S. White Dental Mfg.

Co., 274 U.S. 398, 47 S.Ct. 598, 71 L.Ed. 1120. Here petitioner knew that his dividends had become of no considerable value; that the company was abandoning all further operation and that there were no substantial assets remaining. Perhaps he might have foreseen this outcome before 1929; but until that year the company was still in operation, producing oil, and a reasonably prudent business man would not abandon his interest therein until he received further information that the holdings were abandoned. Under these facts there was no evidence to support a finding that petitioner had failed to prove that his loss was sustained in 1929. True it is that a small dividend of $3.00, apparently liquidating in character, was paid in 1922 but this in itself is not sufficient to support a finding that the loss was not sustained in the year 1929.

Three other losses deducted by the taxpayer, namely: investments in Marigold Oil & Refining Company, Union Oil Company and American Malting Company were disallowed, but petitioner does not seriously question the correctness of this action.

██ In reaching the conclusions herein expressed, we have borne in mind that deductions in calculating income taxes are not matters of personal right; that whether and to what extent they shall be allowed depends upon congressional grace and that, except as there is provision therefor by law, no particular deduction can be allowed. New Colonial Ice Co. v. Helvering, 292 U.S. 435, 54 S.Ct. 788, 78 L.Ed. 1348. But it seems to us that the undisputed facts in this case in the instances where we have indicated error upon the part of the Board are such that the Board was without justification therein to find that the debtor had not proved that the debts in question were, according to the conduct of a reasonably prudent business man, ascertained to be worthless and charged off in 1929 and that in each of said instances, there is no substantial evidence to support the findings.

True it is that only such losses are deductible under the statute as are fixed by indentifiable events occurring in the tax year in which the deduction is claimed. United States v. S. S. White Dental Mfg. Co., 274 U.S. 398, 47 S.Ct. 598, 71 L.Ed. 1120. But it seems clear to us that in the instance mentioned, the proof of identifiable events was clear and that there was no substantial evidence to support any contrary conclusion by the Board.

Accordingly the decision of the Board will be reversed as to the deductions herein approved and in all other respects affirmed and the cause will be remanded to the Board for final computation of petitioner's tax in accordance with the expressions herein contained.