Ewing Hymers v. Commissioner.
Hymers v. Commissioner
Docket No. 3342.
United States Tax Court
1944 Tax Ct. Memo LEXIS 3; 3 T.C.M. (CCH) 1326; T.C.M. (RIA) 44407; December 28, 1944
*3 In the years 1928 and 1930 petitioner made loans to his brother-in-law who was in the business of selling advertising novelties manufactured of leather, metal, wood and paper materials. The debtor paid the interest on some of the loans but nothing on the principal. In 1931 the loans were consolidated in one note due January 2, 1932. The debtor has never paid any interest or any of the principal of this note, although he has from time to time acknowledged the validity of the debt and has expressed to petitioner his intention to pay it. He has continued in the same business of selling advertising novelties but the success of his business has not improved. The statute of limitations has not barred the collection of the debt. In 1941 on account of war conditions the sort of advertising novelties which the debtor had been selling were no longer obtainable in quantities and his business fell to such small proportions that he was compelled to seek employment elsewhere. Held, the loans which petitioner made to his brother-in-law were bona fide loans and not gifts and the promissory note which the debtor executed to petitioner represented a valid debt. Held, further, that this debt *4 became worthless in the year 1941 and petitioner is entitled to the bad debt deduction which he claims under the provisions of section 23 (k) of the Internal Revenue Code, as amended by section 124 of the Revenue Act of 1942. Ewing Hymers, The Emlen Arms, 6733 Emlen St., Philadelphia, Pa., pro se William H. Best, Jr., Esq., for the respondent. BLACK Memorandum Findings of Fact and Opinion The Commissioner has determined a deficiency in petitioner's income tax for the year 1941 of $2,510.87. The petitioner assigns error as follows: The determination of tax set forth in the said Notice of Deficiency is based upon the following error: 1. Disallowance by the Commissioner as a Bad Debt an amount of $7.000.00. Findings of Fact The petitioner is an individual whose legal residence is in Philadelphia, Pennsylvania. The petitioner filed with the Collector of Internal Revenue for the First District of Pennsylvania an individual income tax return, Form 1040, for the taxable year 1941 which return is introduced in evidence. The petitioner claimed as a deduction from gross income for the taxable year 1941 the amount of $7,000 alleged by the petitioner to be a bad debt. This deduction *5 the Commissioner has disallowed and the deficiency is determined solely upon that ground. The petitioner during the years 1928 to 1930 transferred to his brother-in-law, Carl Oscar Robinson, of St. Louis, Missouri, certain sums of money as evidenced by notes executed by Carl Oscar Robinson in favor of the petitioner as follows: $3,000.00
Dated August 13, 1928, due in 6 months
from date; interest at 6% per annum.
$1,000.00
Dated November 17, 1928, due in 90
days from date; interest at 6% per
annum.
$1,000.00
Dated December 5, 1928, due on demand;
interest at 6% per annum.
$1,000.00
Dated January 25, 1930, due in 6
months from date; interest at 6% per
annum.
$1,000.00
Dated July 25, 1930, due on demand;
interest at 6% per annum.
Interest to April 1929 was paid to the petitioner by Robinson on the first three notes listed above and the petitioner included the sum so received in his individual income tax return as income for the taxable year 1929. In January 1931, in order to consolidate into one note the five notes listed above, the petitioner surrendered the said five notes to Robinson and received in return a note in the face amount of $7,605 which sum represented *6 $7,000 principal, plus interest accrued to January 31, 1931, in the amount of $605, said note being in words and figures as follows: "$7605.00 St. Louis, Mo., Jan. 2nd, 1931 Twelve Months AFTER DATE, FOR VALUE RECEIVED, I PROMISE TO PAY TO THE ORDER OF EWING HYMERS SEVEN THOUSAND SIX HUNDRED FIVE DOLLARS ONLY DOLLARS negotiable and payable at MERCANTILE-COMMERCE BANK AND TRUST COMPANY, St. Louis, Mo., with interest after maturity at the rate of six per cent per annum until paid, and in case payment be not made at maturity,… agree to pay in addition all costs of collection and ten per cent (10%) attorney's fee. "Demand for payment, protest and notice of dishonor are hereby waived by all parties. C. Oscar Robinson Due Jan. 2, 1932 Robinson has not paid the note described above, or any part thereof, and not interest has been paid thereon. On May 16, 1928, Robinson became indebted to the Mercantile-Commerce Bank and Trust Company of St. Louis, Missouri, in the sum of $17,000 as evidenced by his promissory note of May 16, 1928, bearing interest at the rate of 5 1/2 per cent per annum, payable semiannually, the principal sum being payable $1,000 on May 16, *7 1931; $1,000 on May 16, 1932; and $15,000 on May 16, 1933. This obligation was secured by a deed of trust on the home of Robinson, said dwelling being located in St. Louis County, Missouri. Robinson was not financially able to pay off his indebtedness to the Mercantile-Commerce Bank and Trust Company of St. Louis, Missouri, and was unable to pay the property taxes on said dwelling after 1931, and in 1931 the bank foreclosed its deed of trust on the dwelling house. The petitioner was at all times aware of the facts stated in this paragraph. The business in which Robinson was engaged at the time petitioner made him the loans and prior thereto, was selling advertising novelties in partnership with his brother, W. S. Robinson, under the firm name of "Robinson Brothers, Advertising Novelties". The novelties sold were made of leather, metal, wood and paper. Prior to the depression years the business of "Robinson Brothers, Advertising Novelties" was good and the firm made profits from year to year. However, when the depression came the business was hard hit, its volume of sales greatly decreased, and the firm became financially embarrassed. Prior to the general depression in 1929, the firm *8 of Robinson Brothers came into some financial difficulties and C. O. Robinson appealed to his brother-in-law, who is the petitioner here, for financial assistance. It was under these circumstances that the loans described above were made. Because of the debtor's earlier business successes the petitioner believed that Robinson Brothers' business would improve when general business conditions improved and that Robinson would repay the loan. Voluminous correspondence between the dates of August 13, 1928 and May 10, 1931, between C. O. Robinson and petitioner was introduced in evidence and shows that the money advancements made by petitioner to Robinson were bona fide loans which Robinson was morally and legally obligated to pay and which he did promise to pay. It is unnecessary to set out in these finding of facts, in detail, this correspondence. The following quotation from Robinson's letter to petitioner dated May 10, 1931, is typical of other letters in the record: "If there was any way of figuring out to cancel my obligation to you Ewing by payments it would have been done. * * * I feel that my obligation of $7,500 to you will be taken care of but under present conditions it has *9 been impossible." The debtor Robinson continued in business after the execution of the promissory note dated January 2, 1931, and after the writing of the letters to which we have above referred, but with no substantial improvement in success and did not pay anything on either the principal or the interest of the note. The debtor's business, as has already been stated, was sales agent for advertising novelties made principally of metallic and plastic metals. In 1941 both materials were considered strategic materials for the prosecution of the war and the resultant priorities prevented the companies which Robinson Brothers represented from continuing to manufacture the advertising novelties which the firm had hitherto sold. The firm of Robinson Brothers ceased business and Robinson secured a position as a workman in a war plant. Petitioner in 1941 became convinced that the debtor, C. O. Robinson, would never be able to repay the indebtedness represented by the note dated January 2, 1931, and he determined same to be worthless and took as a bad debt deduction under item 15 in his return $7,000 which represented the principal which he had originally loaned to Robinson. In a schedule *10 attached to his income tax return he explained this deduction as follows: "My brother-in-law, Carl Oscar Robinson, R.R. 5, Box 5, North Woodlawn Avenue, Kirkwood, Missouri, being in difficulty starting with 1928, appealed to me for assistance, and I made him loans from time to time between the years 1928 and 1930, both inclusive. "This indebtedness originated by loans as follows, for which I took notes, all bearing 6 per cent interest, signed by the individual, but without an endorser or other security. "[Here follow the several advancements set out in our findings above which aggregate $7,000.] "Along about December, 1930, I concluded to bring the item up to date by surrendering the above five notes and taking a new note, or, in other words, centering the entire indebtedness in one note. "At that time the unpaid interest on the above notes was $605.00 up to January 1, 1931. Adding this to the principal of the notes made the amount due January 1, 1931, as $7,605.00. "I then had the following note made: - "[Here follows the note for $7,605 heretofore set out in these findings.] * * * * *
"Constantly over the years I have seen this individual and urged payment of something *11 on the principal of the last note, but he was even unable to pay the interest. Promise of payment was always made, and this promise continues as of recent date. I happen to know that the individual has not been in position to pay. The individual right along took position that his business would improve and that he would be able eventually to discharge this indebtedness, which he greatly desired to do. Now the priority situation has again affected his business, and I have lost all hope of his ever being able to pay this indebtedness. "Only this year, 1941, because of war conditions, do I regard this debt as uncollectible. His business is the sale of advertising novelties. Owing to scarcity of materials and priorities, he is unable to obtain novelties, and his customers, again account war conditions, are no longer purchasing novelties for advertising purposes to the same extent as formerly." The debt in question did become worthless sometime in the year 1941. Opinion BLACK, Judge: The statement attached to the deficiency notice is not in the record and we do not know what reason the Commissioner gave for his disallowance of the $7,000 bad debt deduction which petitioner had claimed *12 in his income tax return. However, regardless of the reasons given in the deficiency notice, the determination of the Commissioner is presumed to be correct and the burden of proof is on petitioner to show that the determination of the Commissioner is in error. The Commissioner's counsel stated at the hearing that respondent's position was two-fold: (1) That the advancements which the petitioner made to his brother-in-law Robinson and which were the foundation for the execution by Robinson to petitioner of the January 2, 1931, note for $7,605 were gifts and not loans. Therefore, the note did not really represent a debt and cannot be taken as a bad debt deduction under the applicable provision of the I.R.C. (2) Respondent contends that even though it be held that the $7,605 note did represent a valid debt from Robinson to petitioner it did not become worthless within the taxable year 1941 but became worthless in some year prior thereto. The evidence at the hearing completely refuted respondent's contention that the note in question from Robinson, as maker, to petitioner did not represent a valid debt. In the first place, the promissory note which is in evidence is an unconditional *13 promise to pay. There are no strings whatever attached to the written promise and petitioner testified at the hearing that there were none. The correspondence between Robinson and petitioner which was introduced in evidence shows that Robinson recognized his unconditional obligation to pay the note and reiterated his intention to do so. It is true, of course, that at the time petitioner made Robinson the loans his financial condition was bad and it is not likely that a commercial bank would have made him a loan without having the loan secured by collateral security. However, Robinson was still in business and the very purpose which petitioner had in mind when he made him the loans was to enable him to meet obligations which were very pressing and the meeting of which was necessary to enable him to continue in business. True enough, the loans when made were hazardous but we do not understand that a debt which under all other conditions and circumstances is a valid debt is rendered invalid because at the time the loan is made its collection at maturity would seem hazardous. If the lender has good reason to believe that notwithstanding the apparent hazards which surround the loan that *14 the debtor will repay, then the debt is valid. We hold against respondent's contention that there was no valid debt from Robinson to petitioner. (2) Respondent's next contention is that even though our Court should hold that there was a valid, existing debt that nevertheless it did not become worthless in the taxable year 1941. This latter contention of respondent presents a much more difficult question than the first. The statute which was in force when petitioner filed his return for the taxable year 1941 was section 23 of the I.R.C. which reads in part as follows: SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: * * * * *
(k) * * * (1) * * * Debts ascertained to be worthless and charged off within the taxable year * * *. In making the ascertainment of worthlessness which the above statute required as a precedent to a charge-off of the debt and the taking of it as a deduction, the taxpayer was allowed "a fair degree of latitude". See Blair et al. v. Commissioner, 91 F.2d 992. The above quoted statute was amended by section 124 of the Revenue Act of 1942 which amendment, so far as *15 applicable here, reads: (a) General Rule. - Section 23 (k) (relating to bad debts and securities becoming worthless) is amended to read as follows: "(k) Bad Debts. - (1) General rule. - Debts which become worthless within the taxable year, * * * The foregoing amendment was made effective with respect to taxable years beginning after December 31, 1938. The effect of this amendment is to allow a deduction for a debt which has become worthless in the taxable year when it actually became worthless, without reference to the year in which the charge-off was made or worthlessness ascertained. Therefore, the issue which we have to decide in the instant case is not "when did petitioner ascertain the debt to be worthless and charge it off" but when did the debt actually become worthless? There seems to be but little, if any, doubt but that the debt was actually worthless in the taxable year. We do not understand respondent to contend otherwise. His contention is that the debt became worthless in some year prior to 1941. If respondent is correct in that contention, then his determination must be sustained for under the present statute it is the burden of petitioner to prove that *16 his debt against Robinson actually became worthless in the taxable year. As we have already indicated, we find some difficulty in saying, when all the evidence is considered, that petitioner has proved that the debt became worthless in 1941. However, all things considered, for reasons which we shall presently state, we think we should decide this issue in petitioner's favor. One of our first inquiries in deciding this issue is to determine whether the statute of limitations had run against the collection of the note in some year prior to 1941. The fact that the statute of limitations appears to have run in a prior year, unless something has tolled it, places the burden upon the taxpayer to show that the statute has not run or that he had some substantial reason to think he might nevertheless eventually receive payment so as to justify charging off the debt as worthless in the latter year. See Mertens Law of Federal Income Taxation, Vol. 5, Sec. 30.49; Duffin v. Lucas, 55 F.2d 786; Sabath v. Commissioner, 100 F.2d 569. The promissory note involved in this proceeding was payable at Mercantile-Commerce Bank and *17 Trust Company, St. Louis, Missouri. The debtor's place of business was St. Louis, Missouri, and he resided there. Therefore, whether the statute of limitations has run against the collection of the note is to be determined by the laws of the State of Missouri. Sections 860 and 861 of Missouri Statutes Annotated provide: § 860. Period of limitation prescribed Civil actions, other than those for the recovery of real property, can only be commenced within the periods prescribed in the following sections, after the causes of action shall have accrued: * * * § 861. What actions shall be commenced within ten years * * * First, an action upon any writing, whether sealed or unsealed, for the payment of money or property; * * * Clearly promissory notes such as the one we have in the instant case are governed by the foregoing ten-year statute of limitations. The note in question became due and payable January 2, 1932, under its express terms. Therefore, its collection was not barred by the Missouri statute of limitations until January 2, 1942. It follows that in the year 1941, which is the taxable year we have before us, the collection of the note was not barred. It would not be barred *18 until January 2, 1942. However, a taxpayer does not have to wait until the statute of limitations has barred the collection of his debt to claim the deduction granted by section 23 (k) if other facts show the worthlessness of the debt prior to the running of the statute. It is his privilege as well as his duty to claim the deduction when the debt actually becomes worthless, regardless of the date when the statute of limitations has run. Cf. Ralph H. Cross, 20 B.T.A. 929; Leo Stein, 4 B.T.A. 1016. We think that when all the facts are considered the debt became worthless in 1941 and that the Commissioner erred in disallowing the deduction claimed. Decision will be entered for the petitioner.