**OKLAHOMA BEN. LIFE ASS'N v. JONES, Collector of Internal Revenue.**

Civil Action No. 1117.

District Court, W. D. Oklahoma.

Oct. 6, 1944.

L. E. McKnight (of Simons, McKnight, Simons, Mitchell & McKnight), of Enid, Okl., and Leonard H. Savage (of Cheek, Gibson, Savage & Benefield), of Oklahoma City, Okl., for plaintiff.

Chas. E. Dierker, U. S. Atty., and Robt. E. Shelton, Asst. U. S. Atty., both of Oklahoma City, Okl. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Andrew D.

424

Sharpe and Paul R. Russell, Sp. Assts. to Atty. Gen., on the brief), for defendant.

VAUGHT, District Judge.

The plaintiff seeks to recover $1121.38, together with six per centum interest, for income tax for the year 1937 and interest paid under protest to H. C. Jones, Collector of Internal Revenue for the District of Oklahoma, defendant. The plaintiff filed its return on form 1120L, the form designed for life insurance companies, claiming it was taxable as a "life insurance company" under sections 201 to 203, inclusive, Revenue Act of 1936, 26 U.S.C.A.Int.Rev.Code §§ 201–203. The plaintiff was reassessed by the Commissioner of Internal Revenue on the theory it should be taxed under section 204 of the Revenue Act of 1936 as an "insurance company other than life or mutual." The taxpayer was required to pay a tax upon the increase of what it claimed was its reserve fund, which tax was paid under protest.

The evidence consists of the stipulations of the parties and the deposition of Jess G. Read, Insurance Commissioner of the State of Oklahoma. Under this record it is shown that the plaintiff is a corporation organized under the laws of Oklahoma. 36 Okl.St.Ann. §§ 691–707. Since April 28, 1925, up to and including the year 1937, it has been licensed each year by the Insurance Commissioner of the State of Oklahoma to transact the type of business authorized under the law applicable thereto. Under such license it wrote three types of contract, as set out in the stipulation. It was required, under the law, to file with the state insurance commissioner an annual statement of its business and its accounts for the current year. It filed such a statement for the year 1937 in which it showed a reserve fund of $71,088, at the beginning of the year 1937, and of $79,873.85, at the close of the year 1937. Such reserve fund was created and maintained under 36 Okl.St. Ann. § 701, which provided such fund could be used only for the payment of policy claims, and it was used for no other purpose. If such fund was used for any other purpose, the officers of the company would be required to restore such fund. If the company should be liquidated, the assets would go to the policyholders.

In the 1935 Session of the Oklahoma Legislature, Section 701, Title 36, Okla-

homa Statutes, was amended, 36 O.S.1941, § 701, and pursuant to such amendment, the state insurance commissioner wrote a letter on January 31, 1936, to the proper officer of the plaintiff, calling his attention to the statute as amended, in which he stated:

"This section, as you will note provides, for the creation and maintenance of an emergency reserve fund to be used by the Association for the purpose of meeting and paying unusual and unanticipated losses and benefits, and for no other purpose. It further provides that the emergency fund shall be available for use by the association without regard to any group, class or circle whose members might be paid assessments therefor. It is therefore unnecessary that the association credit to each individual certificate contributions that are made to the emergency reserve fund; thus it is no longer necessary that the unused portion of the reserve fund to the credit of a certificate of a deceased member be refunded to his beneficiary.

"It follows since the association is not required to credit to each certificate the reserve assessments paid thereon; that the association no longer has the right of transferring to the expense or any other fund the reserve to the credit of a lapsed policy.

"You are hereby notified and requested to refrain from making any transfers from the reserve fund to any other fund on or after February 1, 1936. The officers and directors of your association will be held liable to make good any transfers made on or after the last above mentioned date in violation of this section of our laws as interpreted therein."

The stipulations of the parties contained this paragraph:

"It is further stipulated H. F. Donnelley, a director of the plaintiff company, and its office manager for the calendar year 1937, if sworn in open court, would testify that the reserve fund of the plaintiff company had not been used for any purpose except the payment of policy claims and it was his understanding of the law under which the company operated and the rules and regulations of the Insurance Department of the State of Oklahoma, that the company did not have the right to use said fund for any purpose except for the payment of claims arising under policy contracts and it was further his opinion that after the receipt of the letter from the Insurance Commis-

sioner dated January 31st, 1936, the company did not have the right to transfer from the reserve fund to the expense fund or any other fund reserved to the credit of lapsed policies."

The plaintiff, during the taxable year 1937, maintained but one bank account in which all of its receipts and funds were deposited. These deposits were not earmarked for any particular purpose, but on the books of the company were set up as shown by its annual statement to the insurance commissioner, and the plaintiff at all times had assets as shown by its statement. During the year 1937 it did not maintain a separate bank account earmarked as a reserve or emergency fund, but did carry such a reserve on its books. There were 6193 outstanding membership certificates as of January 1, 1937, and 6067 as of December 31, 1937, covering an approximate amount of insurance of $8,221,750. The company had a lapse of 483 certificates during the year 1937 and no money was transferred from the reserve or emergency fund to the expense fund, or any other fund, because of these lapsed policies.

The plaintiff filed income tax returns on form 1120L for the years 1925 to 1937, inclusive, and prior to the year 1937, it paid no income tax.

The plaintiff presents three questions, but the cause will be disposed of under question number one, therefore, it will be unnecessary to pass upon the other questions.

One. Is the taxpayer a "life insurance company" within the meaning of section 201 of the Revenue Act of 1936 and, therefore, taxable as such under sections 201 to 203, inclusive, of the Act?

Oklahoma Benefit Life Association was organized and operates under the laws of Oklahoma.

Title 36 Okl.St.Ann. § 693 provides in part as follows:

"Mutual benefit associations,—associations, companies or corporations organized as Mutual Benefit Associations shall be carried on for the benefit of their members or their beneficiaries and not for profit, and shall make provisions for the payment of benefits in case of death and make provision for payment of benefits in case of permanent physical disability, as a result of accident, or old age, provided that the period of life at which the payment of physical disability benefits on account of old age is to commence, shall not be under seventy (70) years, all subject to compliance by its members with its constitution and by-laws. The funds from which the expenses, benefits, aids and other charges of such associations shall be defrayed shall be derived from assessments and dues collected from its members * * * in such sum and at such times as the association may determine to be necessary to provide an old age benefit fund sufficient to meet the promised old age benefit when the same matures, but such fund shall be separately maintained and used for no other purpose. * * * And such association may create, maintain, disburse, and apply reserve or emergency funds in accordance with its constitution and by-laws. * * * Such association shall be governed by this Act, and no law shall apply to them unless the same be expressly designated herein."

Section 701 provides in part:

"Every mutual benefit association doing business in this State under the provisions hereof shall by its by-laws provide for the payment by its members of sufficient dues to cover the expenses of conducting the business of such association and for such assessments as may be necessary to provide funds sufficient to pay the benefits to which its members shall become entitled and also to establish an emergency fund of at least one ($1.00) Dollar per annum, per Thousand ($1,000.00) Dollars death benefits with which to meet any unusual or unanticipated benefits or losses which may become due and payable, which emergency fund shall be available for use by the association as may be provided in its by-laws without regard to the group, class or circle whose members might have paid assessments therefor; provided, however, that two additional assessments for such emergency fund of at least One ($1.00) Dollar per Thousand ($1,000.00) Dollars of death benefits shall be levied annually in these circles, classes or groups where and when it may be done in any calendar month in which no death benefit assessment or call for dues is made upon members of such circle, class or group; provided further, that such associations may pay death benefits in excess of seven per thousand in any such circle, class or group when the emergency fund to its credit shall be sufficient therefor; and provided further, that if any annual report of a mutual benefit association, as provided for in this Act or an

investigation of the Insurance Commissioner discloses the fact that the mortuary and emergency funds of such association will not be sufficient to pay the benefits or losses to which its members or their beneficiaries may be entitled during the succeeding biennial period, the Insurance Commissioner, taking into consideration the age of the members and any special provisions for meeting such benefits or losses or for replenishing its funds, may direct such association to make such additional assessments as may be necessary to meet the said benefits or losses during the succeeding biennial period. * * *"

Under its organization the plaintiff adopted certain provisions in its by-laws to comply with section 701, supra, which are in part:

"Article II. Section 1. Assessments: * * * In addition to the above assessments, a minimum of one and not more than three assessments of $1.10 for each One Thousand Dollars ($1,000) of death benefits * * * may be made for an emergency reserve fund. Ten cents of the above assessments shall be placed in the general expense fund and the balance to the respective mortuary or reserve fund. * * *

"Section 2. Emergency Reserve Fund: (a) An emergency reserve fund shall be established for each member of at least One Dollar ($1.00) per annum, per One Thousand Dollars ($1,000.00) Death Benefits, with which to meet any unusual or unanticipated benefits or losses which may become due and payable; * * *.

"(b) All reserve fund assessments shall be credited to the group from which the assessment was made, but shall be placed in one fund for the purpose of meeting emergencies which may arise in any group in the Association. The amount of money thus accumulated may be invested, as provided for in the statutes governing the investment of such funds as is provided for other domestic stock insurance companies, in the State of Oklahoma, or placed on deposit in banks or trust companies designated by the Board of Directors. Any interest accruing from the investment of such funds shall be collected by the Secretary or Treasurer and become a part of the general expense fund of the Association."

The articles of incorporation of the plaintiff company provide in part:

"Article I. The name of this Association shall be the Oklahoma Benefit Life Association."

"Article III. The object of this Association shall be to perfect and maintain a Benefit Life Association for the benefit of certificate holders on the group, circle, level, or stipulated rate plans; * * * and to pay to said member's beneficiary or beneficiaries (as deceased member shall have designated while living), * * * and such certificate may carry additional benefits (aside from death) * * * provided that where certificates are written on the level, or stipulated rate plans, double indemnity may be made a part of such contract."

Under this organization the plaintiff began and has continued to write and issue certificates or policies of insurance which mature either at the death of the certificate holder or upon the happening of other events enumerated in the contract. It writes three classes or forms of certificate, all of which insure the life of the certificate holding member and some of which carry additional benefits such as accident, total and permanent disability, old age and double indemnity. One certificate is on the level rate plan and the others are not limited to the number of assessments per annum that may be levied.

In view of the Oklahoma statutes, the articles of incorporation, the by-laws, and the character of business done and being done by the plaintiff, it becomes necessary to determine first whether it should be classed as a life insurance company.

It was stated in Bowers v. Lawyers Mortg. Co., 285 U.S. 182, 188, 52 S.Ct. 350, 353, 76 L.Ed. 690:

"While name, charter powers, and subjection to state insurance laws have significance as to the business which a corporation is authorized and intends to carry on, the character of the business actually done in the tax years determines whether it was taxable as an insurance company. United States v. Phellis, 257 U.S. 156, 168, 42 S.Ct. 63, 66 L.Ed. 180. Weiss v. Stearn, 265 U.S. 242, 254, 44 S.Ct. 490, 68 L.Ed. 1001, 33 A.L.R. 520."

Under the record here, there is no difficulty in determining that the plaintiff is a life insurance company under the Oklahoma law. Its name would so designate it. Its powers under its charter so designate it. It is under the supervision and control of the state insurance commissioner. Its business consists of issuing policies of insurance to its members, the basic feature of which is life insurance.

It collects and sets aside on its books an emergency fund as a reserve to meet the requirements of its contracts. In the event it should fail so to do, it can be compelled to do so by the state insurance commissioner.

In Commissioner of Internal Revenue v. W. H. Luquire Burial Ass'n Co., Inc., et al., 5 Cir., 102 F.2d 89, 90, the court said:

"Substantially the sole and only business engaged in by the Luquire Company in 1931 and 1932 was that of issuing burial insurance policies. It is true that in 1932 part of its gross income was from funeral and undertaking services. This was due, however, to legislation passed by the State of Alabama which required such companies to maintain facilities for the fulfillment of their policy contracts. The character of the business in which the taxpayer is actually engaged is determinative of its classification for tax purposes."

Having determined that the plaintiff is a life insurance company within the laws of Oklahoma, we must next determine whether the commissioner of internal revenue properly classified and assessed it as an "insurance company other than life or mutual" under section 204 of the Revenue Act of 1936.

■ The finding of the commissioner of internal revenue is presumed to be correct and throws the burden upon the plaintiff of proving it to be wrong.

In Welch v. Helvering, 290 U.S. 111, 115, 54 S.Ct. 8, 9, 78 L.Ed. 212, the court said:

"The Commissioner of Internal Revenue resorted to that standard in assessing the petitioner's income, and found that the payments in controversy came closer to capital outlays than to ordinary and necessary expenses in the operation of a business. His ruling has the support of a presumption of correctness, and the petitioner has the burden of proving it to be wrong. Wickwire v. Reinecke, 275 U.S. 101, 48 S.Ct. 43, 72 L.Ed. 184; Jones v. Commissioner, 7 Cir., 38 F.2d 550, 552."

To determine whether or not the plaintiff successfully met that burden we must view the applicable sections of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Code.

Section 201(a): "When used in this chapter the term 'life insurance company' means an insurance company engaged in the business of issuing life insurance and annuity contracts (including contracts of combined life, health, and accident insurance), the reserve funds of which held for the fulfillment of such contracts comprise more than 50 per centum of its total reserve funds."

Section 202(a)(1): "In the case of a life insurance company the term 'gross income' means the gross amount of income received during the taxable year from interest, dividends, and rents. * * *

"(b) The term 'reserve funds required by law' includes, in the case of assessment insurance, sums actually deposited by any company or association with State or Territorial officers pursuant to law as guaranty or reserve funds, and any funds maintained under the charter or articles of incorporation of the company or association exclusively for the payment of claims arising under certificates of membership or policies issued upon the assessment plan and not subject to any other use."

Section 203(a): "In the case of a life insurance company the term 'net income' means the gross income less— * * *

"(2) Reserve funds. An amount equal to 4 per centum of the mean of the reserve funds required by law and held at the beginning and end of the taxable year, except that in the case of any such reserve fund which is computed at a lower interest assumption rate, the rate of 3¾ per centum shall be substituted for 4 per centum. Life insurance companies issuing policies covering life, health, and accident insurance combined in one policy issued on the weekly premium payment plan, continuing for life and not subject to cancellation, shall be allowed, in addition to the above, a deduction of 3¾ per centum of the mean of such reserve funds (not required by law) held at the beginning and end of the taxable year, as the commissioner finds to be necessary for the protection of the holders of such policies only; * * *."

■ It will be observed that in this legislation it is the purpose of the Act to exempt from taxation as income all funds described in the Act as reserve funds. The reason is obvious. Such reserve funds are not the funds of the organization, as such, but are funds belonging to the holders of the certificates for a specific purpose, and under no just theory could be said to be income of the organization, and regardless of how they might be misused or dissipated by the officers intrusted with them, their character would remain unchanged.

The principle is well expressed in General Life Ins. Co. v. Commissioner of Internal Revenue, 5 Cir., 137 F.2d 185, 189, as follows:

"It is the universal concept that a life insurance company should maintain a reserve—not for its use but which it cannot invade—for the sole and exclusive protection of its policy holders. Since the reserve is held for the policy holders and not for the Company, Congress has not taxed this reserve as income to the Company. It is contemplated that the reserve is made up of money which the policy holder had put up for his own use and protection and not primarily for the use and protection of the Company. There is no apparent inequity in the policy of Congress in not planning to tax such reserve."

Under sections 201 and 203 of the Revenue Act of 1936, supra, the Treasury Department has promulgated certain regulations. Treasury Regulations 94, so far as pertinent to the case at bar, is as follows:

"Art. 201(a)–1. Life Insurance Companies: Definition.—The term 'life insurance company' as used in Title I is defined in section 201(a). In determining whether an insurance company is a 'life insurance company' as defined in section 201(a), no reserve shall be regarded as held for the fulfillment of an insurance contract unless it conforms to the definition of 'reserve' contained in article 203(a) (2)–1."

"Art. 203(a) (2)–1. Reserve Funds.—In general the reserve contemplated is a sum of money, variously computed or estimated, which, with accretions from interest, is set aside (reserved) as a fund with which to mature or liquidate, either by payment or reinsurance with other companies, future unaccrued and contingent claims. * * *

" * * * Reference should be made to the item in which the reserve appears in the annual statement and to the statute or insurance department ruling requiring that such reserves be held. Only reserves which are so required, which are peculiar to insurance companies, and which are dependent upon interest earnings for their maintenance will be considered. * * * "

Referring to this regulation in General Life Insurance Co. v. Commissioner, supra, the court said:

"The first portion of the above regulation is largely taken from the following statement in the opinion in the case of Maryland Casualty Co. v. United States, 251 U.S. 342, 40 S.Ct. 155, 158, 64 L.Ed. 297: 'The term "reserve" or "reserves" has a special meaning in the law of insurance. While its scope varies under different laws, in general it means a sum of money, variously computed or estimated, which, with accretions from interest, is set aside—"reserved"—as a fund with which to mature or liquidate, either by payment or reinsurance with other companies, future unaccrued and contingent claims, and claims accrued, but contingent and indefinite as to amount or time of payment.'

"If the regulation is inconsistent with the statute, the regulation should fall. There is nothing in the statute that refers to a reserve 'actuarially computed', and we see nothing in the decision of the Supreme Court in the Maryland Casualty case, supra, that requires that the reserve be actuarially computed. The Court said that it meant a sum of money 'variously computed or estimated'. We take this to mean that it might be computed in various ways or that it might be estimated."

In the case at bar, it is contended by the defendant that the interest derived from the investment of the emergency fund was to be used, and was used, as a part of the expense fund of the plaintiff corporation. There is nothing in the definition of "reserve funds" in section 202(b), supra, which provides that the reserve shall consist of both the sum of money set aside and "accretions from interest;" on the contrary, the statute itself is silent as to "accretions from interest," it providing that the fund shall consist of "any funds maintained under the charter or articles of incorporation of the company or association exclusively for the payment of claims arising under certificates of membership or policies issued upon the assessment plan not subject to any other use." If such a fund is set up and maintained, the fact that those entrusted with its maintenance abuse the trust cannot change the character of the fund. It is only in article 203(a) (2)–1, Regulations 94, supra, that the phrase, "which, with accretions from interest, is set aside," is found. If this phrase is given effect in the case at bar, it destroys completely the character of the reserve fund and makes the fund taxable as income. Gross income in the case of life insurance companies, as defined in section 202(a) (1), supra, means the "gross amount of income received during the taxable year from interest, dividends, and rents." Section 203

(a), supra, provides that the net income means the gross income less reserve funds, et cetera. Thus we find the treasury regulation in conflict with the statute, and in case of such inconsistency, the regulation must fall.

■ It is wholly immaterial by what name the fund is designated, whether it be called mortuary, emergency, reserve, or any other name. The important fact is that the fund, by whatever name, was set aside for the fulfillment of the contracts of the certificate holders as required by the law of the state or the orders lawfully made by the state insurance commissioner. As stated in Prairie Oil & Gas Co. v. Motter, Collector, 10 Cir., 66 F.2d 309, 311:

"If a taxpayer sought to avoid a tax on the profits of such a sale as this by asking the Commissioner to ignore the actualities, he would shortly and properly be reminded that taxation is an intensely practical matter and that the substance of the thing done, and not the form it took, must govern."

The plaintiff is a life insurance company and the fund taxed is a "reserve fund," required under the Oklahoma law, and is not income within the purview of the statutes.

It is the judgment of the court that the plaintiff is entitled to recover the sum of $1121.38, together with interest at six per centum per annum from December 14, 1940, with its costs expended. To all of which the defendant is granted an exception. A form of judgment, consistent with this opinion and the findings of fact and conclusions of law herewith filed, may be submitted within ten days from this date.